UNITED STATES of America,

v.

Donald THOMAS, Appellant.

No. 79–1769.

United States Court of Appeals,
Third Circuit.

Argued Oct. 11, 1979.

Decided Dec. 5, 1979.

Carlon M. O'Malley, Jr., U. S. Atty., Joseph F. Cimini (argued), Asst. U. S. Atty., Scranton, Pa., for appellee.

James E. O'Brien, Sr., Scranton, Pa., William W. Warren, Jr. (argued), Kennedy, O'Brien & O'Brien, Scranton, Pa., for appellant.

Before ADAMS, ROSENN and WEIS, Circuit Judges.

## OPINION OF THE COURT

### PER CURIAM:

Donald Thomas was charged in a thirty-one count indictment with various offenses arising out of his employment as president of the First National Bank of Carbondale, Pennsylvania. After a jury returned a verdict of guilty on seven of the thirty-one counts, the district judge sentenced Thomas to imprisonment on each count, with all sentences to run concurrently. Thomas filed a timely appeal. We affirm.

Thomas was convicted on counts two through five and nine through eleven. Counts two through four charged that Thomas, as bank president, knowingly and with intent to defraud the bank misapplied funds by causing bills "submitted by Talarico Construction Company to be inflated" in violation of 18 U.S.C. § 656 (1976).[1] Count

---

1. Section 656 provides:
 Whoever, being an officer, director, agent or employee of, or connected in any capacity with any Federal Reserve bank, member bank, national bank or insured bank, or a receiver of a national bank, or any agent or employee of the receiver, or a Federal Reserve Agent, or an agent or employee of a

five alleged that Thomas ordered a letter sent to the Small Business Administration which falsely stated that the bank had not received money owed to it from the American General Life Insurance Co. The indictment charged that this act violated 18 U.S.C. § 1001 (1976).[2] Count nine asserted that Thomas, in violation of § 656, had misapplied funds that had been paid to the bank by one of its debtors, William Fendrock. And, counts ten and eleven alleged that Thomas had misapplied funds by excessively charging the bank's discount installment loan account, again in violation of § 656. The remaining counts, on which Thomas was acquitted, charged that he had embezzled bank funds, misapplied other funds from Fendrock's account,[3] made a false entry in the bank's general ledger,[4] and caused overdrafts to be honored on the account of R & D Investments with knowledge that there were not sufficient funds in R & D's account to cover the overdrafts.[5]

Four principal arguments are presented on appeal: (1) The district court erred in denying Thomas' motions to sever the counts of the indictment and to order separate trials on each of six groups of counts. (2) Thomas' conviction on counts two through four and nine through eleven should be reversed because the prosecution failed to prove that the First National Bank of Carbondale was insured by the Federal Deposit Insurance Corporation (FDIC). (3) The evidence unconstitutionally varied from the terms of counts nine through eleven in that the indictment charged misapplication of bank funds while the testimony concerned misapplication of funds *and* credits. (4) The evidence was insufficient to support the verdict on counts nine through eleven because intent to defraud the bank was not established.

We conclude that the district court correctly denied Thomas' motions to sever the counts of the indictment and that the prosecution's failure to prove that the bank was insured by the FDIC is not a ground for reversal. We also conclude that there was no variance between the indictment and the evidence because the indictment set forth the acts on which Thomas was convicted and the evidence was properly limited to those factual allegations. The record also demonstrates that there was sufficient evidence from which the jury could infer that Thomas intended to defraud the bank.

### I.

Prior to and during trial, Thomas moved to divide the counts into six groups and to order separate trials of each group. The

---

**2.** Section 1001 provides:

Federal Reserve Agent or of the board of Governors of the Federal Reserve System, embezzles, abstracts, purloins or willfully misapplies any of the moneys, funds or credits of such bank or any moneys, funds, assets or securities intrusted to the custody or care of such bank, or to the custody or care of any such agent, officer, director, employee or receiver, shall be fined not more than $5,000 or imprisoned not more than five years, or both; but if the amount embezzled, abstracted, purloined or misapplied does not exceed $100, he shall be fined not more than $1,000 or imprisoned not more than one year, or both.

As used in this section, the term "national bank" is synonymous with "national banking association"; "member bank" means and includes any national bank, state bank, or bank and trust company which has become a member of one of the Federal Reserve banks; and "insured bank" includes any bank, banking association, trust company, savings bank, or other banking institution, the deposits of which are insured by the Federal Deposit Insurance Corporation.

Whoever, in any matter within the jurisdiction of any department or agency of the United States knowingly and willfully falsifies, conceals or covers up by any trick, scheme, or device a material fact, or makes any false, fictitious or fraudulent statements or representations, or makes or uses any false writing or document knowing the same to contain any false, fictitious or fraudulent statement or entry, shall be fined not more than $10,000 or imprisoned not more than five years, or both.

**3.** One of the counts charging misapplication from Fendrock's account was withdrawn by the prosecution.

**4.** This act allegedly violated 18 U.S.C. § 1005 (1976).

**5.** These acts allegedly violated 18 U.S.C. §§ 2, 656 (1976).

district court denied the motions. In its pretrial order, the court reasoned that all of the counts involved actions allegedly taken by Thomas "in contravention of his duties as a bank officer and which injured and defrauded the bank," and thus were of a "sufficiently similar character to permit their joinder under [Fed.R.Crim.P.] 8(a)." [6]

Rule 8(a) provides:

Two or more offenses may be charged in the same indictment or information in a separate count for each offense if the offenses charged, whether felonies or misdemeanors or both, are of the same or similar character or are based on the same act or transaction or on two or more acts or transactions connected together or constituting parts of a common scheme or plan.

The district court did not err in applying this standard. Each count alleged that Thomas used his position as bank president to gain access to and to alter bank records and accounts, and to misappropriate bank funds. And the various counts involved transactions that all occurred within an eighteen-month period of time. Thus, because each offense charged was similar in character to the others, initial joinder of the counts was permissible under Rule 8(a). *See United States v. Catena,* 500 F.2d 1319, 1325–26 (3d Cir. 1974) (affirming denial of Rule 14 motion to sever 141 counts involving separate acts of medicare fraud); *United States v. Tillman,* 470 F.2d 142, 143 (3d Cir. 1972) (per curiam), *cert. denied,* 410 U.S. 968, 93 S.Ct. 1451, 35 L.Ed.2d 702 (1973) (joinder of counts alleging separate sales of heroin and of cocaine held proper). *Cf. United States v. Graci,* 504 F.2d 411, 411–12 (3d Cir. 1974) (joinder of indictments charging conspiracy and sale of stolen government property, and unlawful delivery of a prescription drug held improper).

■ Although joinder is authorized by Rule 8(a), factual information adduced before or during trial may indicate that joint trial of the counts might be unfair to the defendant. To protect against this possibility, Fed.R.Crim.P. 14 provides in part:

If it appears that a defendant or the government is prejudiced by a joinder of offenses or of defendants in an indictment or information or by such joinder for trial together, the court may order an election or separate trials of counts, grant a severance of defendants or provide whatever other relief justice requires.

Primary responsibility for ensuring that a defendant is not prejudiced by joint trial of several offenses rests with the trial judge. Thus, "[t]his court has consistently stated that denial of a severance by the trial court is not ground for reversal absent an abuse of discretion by the trial court. Proof of such an abuse of discretion requires affirmative evidence showing clear prejudice to the defendant." *United States v. Catena,* 500 F.2d at 1326.

■ Before and during trial, Thomas moved pursuant to Rule 14 to sever the counts; the district judge denied each motion. Thomas insists that he was prejudiced by the joinder of offenses because the jury might have improperly regarded the crime charged in each count as corroborative of the other crimes set forth in the indictment. Evidence of "other crimes, wrongs, or acts" is admissible, however, for the purpose of establishing "motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident." Fed.R. Evid. 404(b). All of the counts alleged that Thomas used his position as bank president to gain access to records and accounts and to misappropriate funds from the bank. Thus, had Thomas been tried separately on six groups of counts, evidence of the acts alleged in each count might well have been admissible under Rule 404(b) at the trials of the other counts to prove opportunity, preparation, plan, or knowledge. Consequently, Thomas could not have been prejudiced by any "corroborative effect" of the joint introduction of evidence regarding the crimes alleged in the thirty-one counts of the indictment.

6. *United States v. Thomas,* Nos. 78–67–1&2, slip op. at 2, (M.D.Pa. Oct. 31, 1978), *reprinted in* App. 23a.

Thomas also claims that he was prejudiced by the "cumulative effect" created when the thirty-one counts were tried jointly, in that the jury might have been unable to separate the evidence presented on each offense. The district judge carefully instructed the jurors, however, that they were to consider each count separately.[7] Moreover, the jurors' acquittal of Thomas on twenty-four of the thirty-one counts indicates that they were able to separate the evidence and decide the merits of each count independently of the others. *See United States v. Catena*, 500 F.2d at 1326.

■ A further contention in support of Thomas' Rule 14 claim is that he was prejudiced by the joinder of counts because he was forced to waive his right not to testify as to some of the counts by exercising his right to testify as to others. There is no indication in the record, however, that Thomas raised this matter either by objecting to cross-examination as to certain counts[8] or by requesting the court to charge the jury that it should not draw an inference of guilt from Thomas' failure to testify as to certain counts.[9] Thus, the trial judge was not able to weigh the merits of Thomas' claim against the benefits of jointly trying related counts as he must do in considering a motion to sever pursuant to Rule 14. Because Thomas failed to present this objection in the first instance to the trial judge—the person best able to weigh the competing interests at stake in a severance motion—we decline to consider the point on appeal. *See United States v. Weber*, 437 F.2d 327, 334–35 (3d Cir. 1970), *cert. denied*, 402 U.S. 932, 91 S.Ct. 1524, 28 L.Ed.2d 867 (1971).

A final argument in support of Thomas' motion to sever is that he was prejudiced by the joinder of counts because the case was so complex the jury was unable to deliberate fairly on each separate allegation. While Thomas correctly identifies the potential danger inherent in all cases where several related charges are tried jointly, he underestimates the role that the jury occupies in our system of justice. Many cases—particularly in the antitrust and corporate crime fields—involve a complex series of factual allegations. Trial of these cases frequently requires presentation of seemingly unrelated transactions that in the aggregate amount, for example, to an attempted monopolization or a conspiracy to defraud corporate shareholders. Indeed, in some cases the jury is required to listen to

---

7. The trial judge stated:

 You are here to determine the guilt or innocence of Mr. Thomas from the evidence in this case. If the evidence convinces you beyond a reasonable doubt of his guilt as to any particular count or counts, you should so find.

 If any reasonable doubt remains in your minds after an impartial consideration of all the evidence with respect to a particular count or counts, then it is your duty to find Mr. Thomas not guilty on that count or those counts or all of them if that be the case. A separate crime or offense is charged in each of these 30 counts. Each charge and the evidence pertaining to it [are] to be considered separately. The fact that you may find the accused guilty or not guilty as to one or more of the offenses charged should not control your verdict as to any other offense charged.

8. Although Thomas objected to cross-examination as to count five—the SBA letter count—he did so on the ground that the prosecution would be exceeding the scope of cross-examination because he had not testified during direct questioning about the allegations in that count. The district judge overruled Thomas' objection.

9. It is well-established that it is permissible for a trial court, even in a multicount indictment, to instruct the jury that it may draw an inference of guilt from a defendant's silence when the defendant testifies as to some facts, but refrains from testifying as to other facts within his knowledge. *Caminetti v. United States*, 242 U.S. 470, 494, 37 S.Ct. 192, 61 L.Ed. 442 (1917); *United States v. Weber*, 437 F.2d 327, 334–35 (3d Cir. 1970), *cert. denied*, 402 U.S. 932, 91 S.Ct. 1524, 28 L.Ed.2d 867 (1971). A trial judge might conclude in a particular case, however, that such an instruction would be inappropriate. Thus, if joinder of counts in fact would force a defendant to waive his right not to testify as to some counts in order to testify as to others, a different question would be presented than that which we decide today. *See generally* Note, *The Testifying Defendant—a Proposed Rule of Limited Waiver for the Trial of Joined Offenses*, 118 U.Pa.L.Rev. 424 (1970).

months of testimony. Yet, absent special justification, juries are relied on to recall and to sort through a broad range of evidence to which they are exposed. In some cases, to be sure, the testimony may become so interwoven that no jury could be expected to organize and understand it. To guard against that contingency, the trial judge—who himself has listened to and attempted to follow the testimony—is vested with the authority to declare a mistrial and to order separate trials of the alleged offenses. When a trial judge perceives no such need to sever the counts of the indictment under Rule 14, that decision is accorded broad deference by the appellate courts. *See United States v. Catena*, 500 F.2d at 1325–26. It is the trial judge who is most aware of the need for judicial economy in trying complex cases and of the prejudice that may develop in the joint trial of separate offenses. A trial judge's decision in this regard will not be disturbed unless a clear abuse of discretion is shown. Thomas has not met this burden.

For the reasons set forth above, we hold that the district court did not err in denying the motions to sever the counts of the indictment under Rules 8(a) and 14.

## II.

Thomas also challenges the sufficiency of the evidence to support his conviction on counts two through four and nine through eleven. Specifically, he urges that the prosecution's failure to prove that the First National Bank of Carbondale was insured by the FDIC is fatal to its case on those counts.

These counts alleged that Thomas misapplied bank funds in violation of 18 U.S.C. § 656. Federal jurisdiction over such conduct is established when the misapplication

is made by any person "connected in any capacity with any Federal Reserve Bank, member bank, national bank or insured bank." *Id.* The indictment stated that Thomas was "an officer, that is President of the First National Bank of Carbondale, whose [sic] deposits were insured by the Federal Deposit Insurance Corporation." At trial, however, there was no evidence that the deposits in fact were federally insured; and, Thomas maintains this constituted a failure of proof with respect to one element of the alleged offenses.

Thomas' claim points up what was apparently an oversight on the part of the United States Attorney, but does not establish that this constituted a failure of proof. The indictment stated that Thomas' alleged criminal acts implicated the First National Bank of Carbondale; and, a number of witnesses, including Thomas, testified that they were employees of the "First National Bank." The testimony thereby established the bank's national character, because the word "National" in a bank's title is virtually conclusive evidence that the bank is federally chartered. As the Court of Appeals for the Second Circuit has observed:

> For over a hundred years it has been considered false advertising and unlawful to use the word "national" in the name of any banking institution not organized or operating under the laws of the United States. See Act of March 3, 1873, ch. 269, § 3, 17 Stat. 603, as amended 18 U.S.C. § 709. Moreover, since September 8, 1959, persons joining to establish a national bank must include the word "national" in its name. Pub.L. 86–230, § 25, 73 Stat. 466, codified at 12 U.S.C. § 22.

*United States v. Mauro*, 501 F.2d 45, 49–50 (2d Cir.), *cert. denied*, 419 U.S. 969, 95 S.Ct. 235, 42 L.Ed.2d 186 (1974).[10]

---

**10.** In *Mauro*, the prosecution had failed to prove that the bank against which the defendant's alleged offenses were directed was nationally chartered. The court of appeals held that this did not constitute a failure of proof on the jurisdictional element of the charged offenses because it could take judicial notice of the bank's national character, despite the district court's failure to do so. 501 F.2d at 49. *Ac-*

*cord United States v. Harris*, 530 F.2d 576, 578 (4th Cir. 1976).

*Mauro* was decided prior to the implementation in 1975 of the Federal Rules of Evidence, however, and appears to be inconsistent with the judicial notice provision of Fed.R.Evid. 201. Although Rule 201(f) permits judicial notice to be taken "at any stage of the proceeding," we believe that that subsection is modified by sub-

The district judge instructed the jury that, in order to find Thomas guilty on the counts in question, it must find that "The First National Bank of Carbondale was a national bank." Thomas did not object to this charge. Thus, the indictment alleged that the Bank was a national bank, there was testimony to that effect, and the jury was properly instructed as to the jurisdictional element of § 656.

Absence of proof of FDIC insurance did not deny Thomas either his Fifth or Sixth Amendment rights.[11] Both the grand jury and the petit jury found that the crimes alleged in these counts were subject to federal criminal sanctions. Once the petit jury found that the bank was nationally chartered, the jurisdictional element was established and the FDIC reference became surplusage. *See United States v. Greene*, 497 F.2d 1068, 1086 (7th Cir. 1974), *cert. denied*, 420 U.S. 909, 95 S.Ct. 829, 42 L.Ed.2d 839 (1975) (allegations in indictment of specific intent held to be surplusage because statute required only general intent). *See also Ford v. United States*, 273 U.S. 593, 602, 47 S.Ct. 531, 71 L.Ed. 793 (1927). The Fifth Amendment's guarantee that an accused can be convicted only on the basis of the acts alleged in the indictment therefore was satisfied as to the jurisdictional element. Moreover, Thomas was not denied his Sixth Amendment right to be sufficiently apprised of the nature of the charges so as to be able to defend against them. The indictment correctly alleged that crimes against the bank were subject to federal criminal jurisdiction. As a former president of the bank, Thomas necessarily knew of the bank's national character, and therefore cannot seriously contend that he would have disputed the jurisdictional allegation, let alone argue that he was prejudiced by the lack of proof of FDIC insurance.

We hold that the federal jurisdictional basis for Thomas' conviction on counts two through four and nine through eleven is supported by the evidence. On the facts of this case, the absence of testimony that the bank was insured by the FDIC constitutes harmless error. Fed.R.Crim.P. 52(a). *See United States v. Schoenhut*, 516 F.2d 1010, 1021–22 (3d Cir.), *cert. denied*, 439 U.S. 964, 99 S.Ct. 450, 58 L.Ed.2d 421 (1978) (alleged variance that neither modified elements of crime charged nor impaired defendant's ability to prepare defense held harmless).

### III.

Thomas also urges that he was unconstitutionally convicted on counts nine through eleven because the evidence varied substantially from the terms of the indictment. In these counts, the indictment alleged that Thomas misapplied bank funds in violation of § 656. At trial, however, the prosecution was permitted to introduce testimony and documentary evidence that he misapplied funds *and* credits. The district judge charged the jury that it could convict Thomas if it found that he misapplied funds *or* credits. Thomas contends that the admission of evidence of misapplication of credits and the jury instruction in this regard was an unconstitutional constructive amendment of the indictment under the rule of *Stirone v. United States*, 361 U.S. 212, 80 S.Ct. 270, 4 L.Ed.2d 252 (1960).

section g which provides that "[i]n a criminal case, the court shall instruct the jury that it may, but is not required to, accept as conclusive any fact judicially noticed." By taking judicial notice itself that the bank was nationally chartered, the Second Circuit effectively prevented the jury from choosing to ignore the court's factual conclusion, as it now would be permitted to do under Rule 201(g). In our view, the provision of Rule 201(g) allowing a jury to disregard a judicially noticed "fact" was designed to protect the Seventh Amendment right of criminal defendants to have all issues of fact, whether jurisdictional or substantive, decided by a jury. *See United States v. Jones*, 580 F.2d 219 (6th Cir. 1978).

In contrast to *Mauro*, there was evidence presented at trial that the bank with which Thomas was associated was the First *National* Bank of Carbondale; and, the trial court instructed the jury that in order to convict Thomas it must find that the bank was a national bank. Thus, the jurisdictional issue in this case was decided by the jury, not by the trial court or appellate court.

**11.** *See* pages 13 & 14 *infra*.

■ As we recently stated, the Fifth Amendment assures that an accused is tried only for felonies for which he has been charged by a grand jury.[12] This right is "designed to protect 'citizens against vindictive prosecutions, either by the government or by political partisans, or by private enemies.'" *United States v. Shoup*, No. 79–1391, 608 F.2d 950, 960 (3d Cir. 1979) (quoting 1 J. Story, Commentaries on the Constitution of the United States § 1779, at 658 (1833)). Moreover, the Sixth Amendment guarantees that criminal defendants be given sufficient notice of the nature of the charges in order to defend against them.[13] *Id.*, at 960–61.

The Supreme Court in *Stirone* reversed the defendant's conviction because the evidence presented at trial varied so substantially from the facts set forth in the indictment that the defendant in effect was convicted of a crime for which he was not charged. The indictment had alleged that Stirone unlawfully interfered with interstate commerce by importing sand into Pennsylvania, while the evidence showed not only importation of sand, but also exportation of steel. The Court held that this amounted to an unconstitutional variance between the indictment and the proof, which "destroyed the defendant's substantial right to be tried only on charges presented in an indictment returned by a grand jury." 361 U.S. at 217, 80 S.Ct. at 273. "[I]t cannot be said with certainty," declared the Court, "that with a new basis for conviction added, Stirone was convicted solely on the charge made in the indictment the grand jury returned." *Id.* In *Shoup*, we interpreted *Stirone* as proscribing convictions based on evidence of *acts* substantially different from those alleged in the indictment. 608 F.2d at 961 & n.23.

■ Although the indictment brought against Thomas alleged misapplication of funds, it set forth the specific acts for which Thomas would be tried.[14] And, there is no indication in the record that evidence or instructions were presented to the jury of acts different from those alleged in the indictment. In light of the high degree of factual specificity of the indictment, the introduction of testimony regarding misapplication of credits and the addition of the term "credits" in the jury charge represent only a semantic difference. Thomas was convicted for acts alleged in the indictment and he was apprised of the nature and details of the charges brought against him. *See United States v. Shoup*, 608 F.2d at 960–61. Accordingly, we hold that the evidence presented against Thomas did not constitute a substantial variance from the terms of the indictment within the meaning of *Stirone* and *Shoup*, and that Thomas was accorded the protections guaranteed him by the Fifth and Sixth Amendments.

## IV.

■ Thomas' last contention is that there was insufficient evidence to support

---

**12.** Amendment V to the Constitution provides in part:

> No person shall be held to answer for a capital, or otherwise infamous crime, unless on a presentment or indictment of a Grand Jury . . . . .

**13.** Amendment VI to the Constitution provides in part:

> In all criminal prosecutions, the accused shall enjoy the right . . . to be informed of the nature and cause of the accusation . . . .

**14.** After reciting that Thomas was president of the First National Bank of Carbondale, that the bank's deposits were federally insured, and that he misapplied funds, the three counts at issue alleged the following acts:

> *Count 9*
> [Thomas] caused to be disbursed funds of said Bank to pay off Fendrock Mortgage 90101322 by charges to the Bank's Discount Installment Loan Account when in fact William Fendrock had provided Donald Thomas funds to pay off said mortgage.
> *Count 10*
> [Thomas] excessively charged the Bank's Discount Installment Loan Account in the amount of $92,259.62 giving credit to Fendrock Loan 21899.
> *Count 11*
> [Thomas] excessively charged the Bank's Discount Installment Loan in the amount of $39,744.38 and reserved for bad debts the amount of $20,000.00 giving credit in the amount of $59,744.38 to Fendrock Loan 21900.

his conviction on counts nine through eleven. He claims specifically that the prosecution proved only bookkeeping alterations without showing conversion or intent to defraud the bank.

Section 656 contains four basic elements:

1. The bank must have been national in character; [15]
2. The defendant must have been an officer of the bank;
3. The defendant must have willfully misapplied bank funds, credits, or moneys; [16]
4. The defendant must have acted with intent to defraud the bank.

*United States v. Schoenhut*, 576 F.2d 1010 (3d Cir. 1978). It is well-settled that intent to defraud the bank exists if the officer " 'acts knowingly and if the natural result of his conduct would be to injure and defraud the bank even though this may not have been his motive,' and . . . '[s]uch intent may be inferred from facts and circumstances shown at trial and is basically a fact question for the jury.' " *United States v. Krepps*, 605 F.2d 101, 104 (3d Cir. 1979) (quoting *United States v. Schmidt*, 471 F.2d 385, 386 (3d Cir. 1972) (per curiam); and *United States v. Schoenhut*, 576 F.2d at 1024). Moreover, " '[r]eckless disregard of the interests of the bank is equivalent to intent to injure or defraud,' and a conviction may be returned notwithstanding the fact that the bank has suffered no actual injury." *Id.* (citations omitted). The element of misapplication requires proof of conversion of bank funds, credits, or moneys. It is not necessary to prove, however, that the defendant himself was the beneficiary of the misapplication. *United States v. Gallagher*, 576 F.2d 1028, 1044 (3d Cir. 1978).

 There was testimony that Thomas cancelled William Fendrock's loan obligation to the bank by charging the debt to the bank's discount installment loan account which was overvalued as a result of computer error, and that the proper procedure would have been to charge the debt to the bad debt reserve. There is no question that Fendrock benefitted financially from this action. The prosecution argued that Thomas charged the discount installment loan account instead of the bad debt reserve so that the writing off of the loan as an uncollectable debt would not reflect adversely on his performance as bank president. We conclude that the jury reasonably could have inferred from this that Thomas acted with intent to defraud the bank and that there was a conversion of funds or credits to Fendrock.

## V.

The judgment of conviction will be affirmed on all counts.