**UNITED STATES of America,
Plaintiff-Appellee,**

v.

**Jerome BERARDI, Defendant-Appellant.**

No. 81–1902.

United States Court of Appeals,
Seventh Circuit.

Argued Dec. 10, 1981.

Decided April 14, 1982.*

---

\* This opinion has been circulated among all judges of this court in regular active service. No judge favored a rehearing en banc on the question whether to adopt, for purposes of 18 U.S.C. § 1503, the definition of "witness" contained in *Berra v. United States*, 221 F.2d 590 (8th Cir. 1955), *aff'd on other grounds*, 351 U.S. 131, 76 S.Ct. 685, 100 L.Ed. 1013 (1956).

Patrick A. Tuite, Chicago, Ill., for defendant-appellant.

Thomas M. Durkin, Asst. U. S. Atty., Dan K. Webb, U. S. Atty., Chicago, Ill., for plaintiff-appellee.

Before SWYGERT, Senior Circuit Judge, and CUDAHY and POSNER, Circuit Judges.

CUDAHY, Circuit Judge.

Defendant-appellant Jerome Berardi was charged in a seven-count indictment with

mail fraud, extortion and obstruction of justice. The jury acquitted him of mail fraud and extortion but found him guilty of obstructing justice. He appeals from this judgment of conviction. In his appeal Berardi raises a number of issues concerning the alleged duplicity of the obstruction of justice count, prejudicial joinder of counts, and the sufficiency of the evidence. We affirm his conviction.

## I.

Viewing the evidence in the light most favorable to the government, *Glasser v. United States*, 315 U.S. 60, 62 S.Ct. 457, 86 L.Ed. 680 (1942), the jury could have found the following to be the facts:

The defendant, Jerome Berardi, was employed from 1975 until September of 1980 as Chief Clerk of the Cook County Board of Appeals (the "Board"). The function of the Board is to review real estate assessments made by the Cook County Assessor. As Chief Clerk, Berardi exercised administrative authority over the processing of taxpayer complaints filed with the Board.

In the spring of 1976, Edward Krupa, a clerk employed by the Board, introduced Berardi to Walter Heiden, then the president of Gateway Chevrolet Sales, Inc., a car dealership located in Chicago.[1] Krupa asked Heiden to sell Berardi a car at dealer cost, apparently sweetening this request with the suggestion that Berardi might prove helpful with Gateway Chevrolet's real estate taxes. Heiden did subsequently sell Berardi a car, and in July of 1976, Berardi returned to Gateway Chevrolet seeking repairs. Krupa, who was present at Gateway Chevrolet during this visit, asked Berardi if he could assist Heiden with his real estate taxes. Berardi instructed Heiden to collect his old tax bills and Berardi agreed to review them.

Heiden presented his tax bills to Berardi in November or December of 1976. Berardi said that he could save Heiden $9,000 on his taxes but that this effort would cost Heiden $3,000 in cash. Heiden paid Berardi the money, after which Berardi filed with the Board a complaint (including property appraisals) concerning Gateway Chevrolet's property assessment. The Board lowered the assessment, resulting in a reduction of $9,000 in Gateway Chevrolet's 1976 tax bill. Heiden at no point during this proceeding filled out a complaint or appeared at a hearing before a Board hearing officer. A similar deal concerning Gateway Chevrolet's 1977 taxes was successfully completed in January of 1978, for the same price and with the same reduction in taxes.

Sometime in late 1978 or early 1979, Berardi informed Heiden that a reporter for the *Chicago Tribune* was examining Board records. Berardi told Heiden that, if questioned by the reporter, he should say that Heiden himself had prepared the complaint forms and had appeared at a Board hearing before hearing officers Jimmie Smith and Donald Erskine. Berardi also instructed Heiden not to reveal Berardi's participation in the property assessment reductions or to disclose the payment of money to Berardi. No part of this story was true but Heiden repeated it to the reporter when he in fact questioned Heiden.

On February 15, 1979, the Special January 1979 Grand Jury entered the picture, commencing an investigation into allegedly unlawful real estate assessment reductions granted by the Board. During April and May of 1979, the FBI examined the Board's files and interviewed a number of Board employees.

Perhaps sensing the possible uncovering of the Heiden payoffs, Berardi visited Heiden at Gateway Chevrolet in late March or early April. Berardi told Heiden of the FBI's investigation and indicated that he wanted to return some ($1,000) of the money that Heiden had paid him. Berardi instructed Heiden, if he should be summoned to appear before a grand jury, to say that Heiden had personally ordered and paid for the property appraisals, and not to disclose Berardi's own role in the assessment reductions at Gateway Chevrolet.

---

1. Heiden, testifying under a grant of immunity, became the principal witness against Berardi at trial.

Heiden was interviewed by the FBI in late June or early July.[2] Heiden related to the agents the story that Berardi had basically outlined for him, namely, that Heiden had ordered the property appraisals and had appeared at a Board hearing over which Smith and Erskine had presided. As they left, the agents told Heiden to expect a grand jury subpoena. The following day, Heiden called Berardi to report on the FBI interview and to inform Berardi of the anticipated subpoena. Berardi again advised Heiden not to reveal to the grand jury that he had paid Berardi money in exchange for reductions in property assessments.

Heiden was served with a subpoena on July 23, 1979. He immediately called Berardi with the news. Again Berardi pleaded with Heiden not to disclose the payoffs and he also told Heiden to lie to the grand jury. At this point, Heiden said he was going to get a lawyer.

On January 8, 1981, a superseding indictment was returned, charging Berardi with four counts of mail fraud, 18 U.S.C. § 1341 (Counts One through Four), two counts of extortion in violation of the Hobbs Act, 18 U.S.C. § 1951 (Counts Five and Six), and one count of obstruction of justice, 18 U.S.C. § 1503 (Count Seven). The jury, as indicated, found Berardi not guilty of mail fraud and extortion but found him guilty of obstructing justice.

## II.

Berardi's first contention is that Count Seven, charging him with obstruction of justice, was prejudicially duplicitous. Count Seven alleged that "[f]rom in or around April 1979 and continuing until in and around July 1979," Berardi in violation of 18 U.S.C. § 1503[3] corruptly endeavored to influence Heiden to testify falsely before the grand jury. The count then described three episodes in which Berardi was alleged to have furthered this endeavor. In each episode, Berardi was charged with having instructed Heiden to give false testimony to the grand jury.[4] Berardi claims that each episode or act constitutes a separate and distinct offense. Before trial, he moved to dismiss Count Seven or, in the alternative, to compel the government to make an election as to which of the three acts it would rely on at trial. This motion was denied by the district court.

A duplicitous count is one that charges more than one distinct and separate offense. *United States v. Zeidman*, 540 F.2d 314, 316 (7th Cir. 1976); *United States v. Isaacs*, 493 F.2d 1124, 1154 (7th Cir.), *cert. denied*, 417 U.S. 976, 94 S.Ct. 3183, 41 L.Ed.2d 1146 (1974); 8 J. Moore, Federal Practice ¶ 8.03 (1981).[5] A count is not duplicitous, however, if it simply charges the commission of a single offense by different means. *United States v. Pavloski*, 574 F.2d 933, 936 (7th Cir. 1978); *United States v. Tanner*, 471 F.2d 128, 138 (7th Cir.), *cert. denied*, 409 U.S. 949, 93 S.Ct. 269, 34 L.Ed.2d 220 (1972). Rule 7(c) provides that "[i]t may be alleged in a single count that the means by which the defendant commit-

2. Heiden testified at trial that the FBI interview occurred either in late June or in July: "It could have been the end of June, but July sort of rings a bell." Tr. 189. Leslie Olson, one of the FBI agents who questioned Heiden, testified that the interview took place on July 17, 1979. Tr. 615.

3. 18 U.S.C. § 1503 (1976) provides in pertinent part:
   Whoever corruptly, or by threats or force, or by any threatening letter or communication, endeavors to influence, intimidate, or impede any witness, in any court of the United States or before any United States commissioner or other committing magistrate, or any grand or petit juror, or officer in or of any court of the United States, or officer who may be serving at any examination or other proceeding before any United States commissioner or other committing magistrate, in the discharge of his duty, ... or corruptly or by threats or force, or by any threatening letter or communication, influences, obstructs, or impedes, or endeavors to influence, obstruct, or impede, the due administration of justice, shall be fined not more than $5,000 or imprisoned not more than five years, or both.

4. The three episodes or acts of obstruction specified in Count Seven occurred, respectively, "[i]n and around April 1979," "[i]n and around June 1979," and "[i]n and around July 1979."

5. The prohibition of duplicitous counts is embodied in Rule 8(a) of the Federal Rules of Criminal Procedure, which provides for "a separate count for each offense."

ted the offense are unknown or that he committed it by one or more specified means." Fed.R.Crim.P. 7(c)(1). This rule necessarily contemplates that two or more acts, each one of which would constitute an offense standing alone, may be joined in a single count without offending the rule against duplicity. *Pavloski*, 574 F.2d at 936.[6]

The line between multiple offenses and multiple means to the commission of a single continuing offense is often a difficult one to draw. The decision is left, at least initially, to the discretion of the prosecution. *United States v. Tanner*, 471 F.2d 128, 138 (7th Cir.), *cert. denied*, 409 U.S. 949, 93 S.Ct. 269, 34 L.Ed.2d 220 (1972); *United States v. Alsobrook*, 620 F.2d 139, 142 (6th Cir.), *cert. denied*, 449 U.S. 843, 101 S.Ct. 124, 66 L.Ed.2d 51 (1980). In the instant case, it is no doubt true that the three acts of obstruction described in Count Seven could have constituted independent violations of section 1503 and could have been charged in separate counts. Had the government taken this route, of course, Berardi would have been subjected to multiple statutory penalties. The government, however, declined this opportunity to cumulate these punishments and the indictment, fairly interpreted, charges Berardi with a continuing course of conduct, during a discrete period of time, to influence Heiden's grand jury testimony.

We believe that the government's characterization of the facts as a single continuing offense was a fair one under the circumstances and is one which comports with the language of section 1503. *See United States v. Zeidman*, 540 F.2d 314, 317

(7th Cir. 1976). The obstruction of justice statute makes it unlawful for a person to "endeavor" to "influence, intimidate, or impede any witness." Although the section permits an indictment for each discrete act of obstruction, it also contemplates a continuing course of conduct, during the pendency of a judicial proceeding, designed to further the single object of influencing, intimidating or impeding a witness.[7] The government's characterization of the offense was also appropriate under the particular facts of this case. The three alleged acts of obstruction occurred within a relatively short period of time, were committed by one defendant, involved a single witness, and were in furtherance of Berardi's solitary object of influencing Heiden not to reveal to the grand jury the circumstances of the property assessment reductions.

From what we have said it should be apparent that our conclusion does not conflict with *United States v. Tanner*, 471 F.2d 128 (7th Cir.), *cert. denied*, 409 U.S. 949, 93 S.Ct. 269, 34 L.Ed.2d 220 (1972), on which Berardi relies. In *Tanner*, a number of defendants were charged in a single count with transporting explosives in interstate commerce with intent to cause damage to property. A bill of particulars disclosed that the acts of transporting explosives occurred on numerous dates during a three-month period and involved journeys to five different cities. This court held that the offense was so vaguely defined in the count as to be prejudicially duplicitous. In the instant case, by contrast, the three acts alleged in Count Seven were much more closely interrelated than the wide ranging activities charged in *Tanner*, as the acts

---

6. *See, e.g., United States v. Zeidman*, 540 F.2d 314 (7th Cir. 1976) (single count of mail fraud not duplicitous even though allegations embraced two classes of victims and could have been charged in separate counts); *United States v. Isaacs*, 493 F.2d 1124, 1154–55 (7th Cir.), *cert. denied*, 417 U.S. 976, 94 S.Ct. 3183, 41 L.Ed.2d 1146 (1974) (single count charging separate allegedly perjurious statements not duplicitous); *United States v. Alsobrook*, 620 F.2d 139 (6th Cir.), *cert. denied*, 449 U.S. 843, 101 S.Ct. 124, 66 L.Ed.2d 51 (1980) (single count alleging six separate acts of interstate

travel with intent to carry on gambling activity not duplicitous).

7. "Endeavor" means to strive to attain some object. Webster's New Collegiate Dictionary (1959). *See also United States v. Zolli*, 51 F.R.D. 522, 526 (E.D.N.Y.1970). The commission of several acts in furtherance of the single object of influencing a particular witness therefore appears to be within the statutory definition of the offense of "endeavoring" to influence a witness.

here involved a single defendant's attempt to influence a single witness's testimony.

■ We reach our conclusion that Count Seven was not prejudicially duplicitous recognizing that, "[w]hen the offenses joined bear a relationship to one another and may be said to constitute a continuing course of conduct, the 'distinct and separate' test should be applied, not as a metaphysical exercise, but with a view toward serving the purposes of the prohibition against duplicity." *United States v. Pavloski*, 574 F.2d 933, 936 (7th Cir. 1978). The dangers posed by a duplicitous indictment include the possibility that the defendant may not be adequately notified of the charges against him, that he may be subjected to double jeopardy, that he may be prejudiced by evidentiary rulings at trial, and that he may be convicted by a less than unanimous verdict. *United States v. Alsobrook*, 620 F.2d 139, 142 (6th Cir.), *cert. denied*, 449 U.S. 843, 101 S.Ct. 124, 66 L.Ed.2d 51 (1980); *United States v. Starks*, 515 F.2d 112, 116–17 (3d Cir. 1975). None of those dangers were present in the instant case.

The detailed specification of the three acts of obstruction alleged in Count Seven provided more than adequate notice of the charges against Berardi, and foreclosed any possibility that he might later be prosecuted for the same acts. *See United States v. Zeidman*, 540 F.2d 314, 317 (7th Cir. 1976). Berardi does not claim to have been prejudiced by any evidentiary rulings at trial. Berardi argues strenuously, however, that the alleged duplicity of Count Seven deprived him of the clear concurrence of all of the jurors in the verdict. Specifically, he contends that the jurors may have relied on

different acts in concluding that he was guilty of obstructing justice. The jury was instructed, however, that, in order to convict Berardi, they "must be unanimous in ... finding that the defendant did at least one of the acts charged ...." Tr. 950. We think that this instruction, reasonably interpreted, required that with respect to at least one of the three acts charged, the jury unanimously agree that Berardi was guilty.[8] We thus conclude that Berardi was not faced with the possibility of a nonunanimous jury verdict, and that Count Seven was not defective because of prejudicial duplicity.[9]

## III.

Prior to trial, Berardi filed a motion pursuant to Rules 8 and 14 of the Federal Rules of Criminal Procedure seeking a severance of Count Seven from Counts One through Six on grounds of prejudicial joinder. He assigns as error the district court's denial of the motion. We conclude that the court below acted properly.[10]

■ Rule 8(a) authorizes the joinder of offenses that "are based on the same act or transaction or on two or more acts or transactions connected together or constituting parts of a common scheme or plan." Fed.R. Crim.P. 8(a). "Transaction" is a word of flexible meaning and "may comprehend a series of many occurrences, depending not so much upon the immediateness of their connection as upon their logical relationship." *United States v. Park*, 531 F.2d 754, 761 (5th Cir. 1976) (quoting *Moore v. New York Cotton Exchange*, 270 U.S. 593, 610, 46 S.Ct. 367, 371, 70 L.Ed. 750 (1926)). In determining whether the connection between the acts charged is sufficient to meet

---

**8.** In *United States v. Zeidman*, 540 F.2d 314, 317–18 (7th Cir. 1976), we held that a similar instruction was sufficient to remove any possibility that the jury returned a less than unanimous verdict.

**9.** We reserve until Part IV *infra* our consideration of Berardi's contention that the jury may have based its verdict on an act or episode for which sufficient evidence was lacking or which did not constitute a violation of the statute.

**10.** Because Berardi failed to renew his motion at the close of all of the evidence, he has waived the right to press this issue on appeal. The trial court's decision may be reversed, therefore, only for plain error. *United States v. Luschen*, 614 F.2d 1164, 1174–75 (8th Cir.), *cert. denied*, 446 U.S. 939, 100 S.Ct. 2161, 64 L.Ed.2d 793 (1980). We have examined Berardi's contentions as if he had preserved the issue on appeal, however, and conclude that the motion was properly denied.

the requirements of joinder under Rule 8(a), the court should be guided by the extent of evidentiary overlap. *United States v. Raineri*, 670 F.2d 702 (7th Cir. February 8, 1982); *United States v. Zouras*, 497 F.2d 1115, 1122 (7th Cir. 1974). For example, in *United States v. Pacente*, 503 F.2d 543 (7th Cir.) (en banc), *cert. denied*, 419 U.S. 1048, 95 S.Ct. 623, 42 L.Ed.2d 642 (1974), this court sustained the joinder of counts charging extortion and the making of false declarations to a grand jury. The allegedly false statements, we said, concerned the acts that formed the basis of the extortion count, and the two offenses required substantially the same proof.[11]

■ We agree with the district court that joinder was proper in the instant case. The acts alleged in Count Seven were logically related to those charged in Counts One through Six. Berardi's participation in a scheme to reduce Gateway Chevrolet's taxes in exchange for a financial payoff could not succeed unless the facts relating to the scheme were withheld from the grand jury investigating this and similar transactions. Moreover, there was substantial overlap in the evidence used to prove Berardi's guilt on the various counts. In *United States v. Rajewski*, 526 F.2d 149 (7th Cir. 1975), *cert. denied*, 426 U.S. 908, 96 S.Ct. 2231, 48 L.Ed.2d 833 (1976), we considered the question of evidentiary overlap in the context of an obstruction of justice count joined with a fraud count. Upholding the joinder, we observed:

> On the one hand, the accumulated evidence of fraud tended to establish the motive for Rajewski's obstruction of justice, and, on the other hand, the accumulated evidence of the grand jury proceedings and the events leading up thereto tended to establish Rajewski's guilty consciousness of the fraud. The two facets

of the evidence were mutually dependent upon and inextricably connected with one another, in spite of the fact that the evidence proving them individually was not identical.

526 F.2d at 155. *See also United States v. Raineri*, 670 F.2d 702, 708–09 (7th Cir. February 8, 1982). Similarly in the instant case, evidence of Berardi's involvement in the alleged extortion and mail fraud tended to establish a motive for the obstruction of justice, and evidence of his efforts to influence Heiden's testimony tended to establish Berardi's guilty consciousness of the illegal payoffs. Count Seven and Counts One through Six were thus "inextricably connected" and their joinder under Rule 8(a) was permissible.

■ Even though distinct offenses have been joined properly under Rule 8(a), a court may grant severance if it appears that the defendant will be prejudiced by the joinder. Fed.R.Crim.P. 14.[12] In a Rule 14 severance motion the defendant bears the difficult burden of demonstrating prejudice from the joinder, and the trial court's denial of severance may be reversed only for clear abuse of discretion or for plain error affecting substantial rights. *United States v. McPartlin*, 595 F.2d 1321, 1333 (7th Cir.), *cert. denied*, 444 U.S. 833, 100 S.Ct. 65, 62 L.Ed.2d 43 (1979); *United States v. Kopel*, 552 F.2d 1265, 1272 (7th Cir.), *cert. denied*, 434 U.S. 970, 98 S.Ct. 520, 54 L.Ed.2d 459 (1977).

■ Berardi advances two arguments in support of his claim of prejudicial joinder. First, he maintains that much of the exhaustive testimony adduced at trial on the first six counts would have been inadmissible, or of limited admissibility, at a separate trial on Count Seven. He notes specifically that evidence pertaining to the operations of the Board and the County Assessor's

---

11. *See also United States v. Duzac*, 622 F.2d 911 (5th Cir.), *cert. denied*, 449 U.S. 1012, 101 S.Ct. 570, 66 L.Ed.2d 471 (1980) (proper to join perjury count with count charging wilful deprivation of civil rights where perjurious statements were made before a grand jury investigating the civil rights charge).

12. Rule 14 of the Federal Rules of Criminal Procedure states in pertinent part that "[i]f it appears that a defendant or the government is prejudiced by a joinder of offenses ... the court may order an election or separate trials of counts ... or provide whatever other relief justice requires."

Office, as well as evidence (including charts) showing a comparison between the property assessments of Gateway Chevrolet and neighboring properties, prejudiced the jury's consideration of Count Seven. Berardi's argument is untenable. In the first place, it is inconceivable to us that the quite mundane evidence cited to us by Berardi as prejudicial could have unfairly influenced the jury's verdict on Count Seven. In addition, as our *Rajewski* decision indicates, most of the evidence relating to Counts One through Six would have been admissible as substantive evidence in a separate trial on Count Seven.[13] We thus perceive no prejudice to Berardi resulting from the possible overlap in the evidence introduced at trial on the joined counts.

Berardi's second argument is that his acquittal on the first six counts of the indictment destroyed the government's theory of a "logical relationship" between Count Seven and the other counts. He relies on *United States v. Ragghianti*, 527 F.2d 586 (9th Cir. 1975). In that case, the defendant was charged with the commission of two separate bank robberies, joined in a two-count indictment as offenses "of the same or similar character." Fed.R.Crim.P. 8(a). After the jury returned a verdict of guilty on both counts, the trial court granted a motion for acquittal on one count because of insufficient evidence. The Ninth Circuit reversed the conviction on the other count after indicating the possibility of prejudicial joinder. *Ragghianti*, however, differs from the instant case in at least two respects. First, it involved the joinder of offenses of the same or similar character, where the dangers of prejudice are recognized to be particularly pronounced. *See* 8 J. Moore, Federal Practice ¶ 8.05[2] (1981). Also, the evidence was insufficient with respect to one of the joined counts; in the instant case there was sufficient evidence to submit all seven counts to the jury.[14] In any event, *Ragghianti* stands only for the proposition that courts should be particularly sensitive to the possibility of prejudice in these circumstances. 527 F.2d at 587.[15]

The jury was instructed in the instant case to give separate consideration to each count in the indictment. This instruction was an adequate safeguard against the risk of prejudice in the form of jury confusion, evidentiary spillover and cumulation of evidence. *United States v. Strand*, 617 F.2d 571, 575 (10th Cir.), *cert. denied*, 449 U.S.

---

**13.** Berardi thus errs when he insists that, in a separate trial on Count Seven, evidence of his participation in the two alleged payoffs would be admissible only for the limited purposes permitted by the "other crimes" provision of Rule 404(b) of the Federal Rules of Evidence. Rule 404(b) becomes an important indicator of prejudice primarily in cases involving joinder of offenses "of the same or similar character." Fed.R.Crim.P. 8(a). *See United States v. Bronco*, 597 F.2d 1300 (9th Cir. 1979). As noted, however, the instant case involves joinder of offenses arising from the *same* act or transaction, and evidence relating to one count could serve as substantive evidence as to the others.

**14.** See Part IV *infra* for our review of the sufficiency of the evidence on Count Seven. No claim has been made that the evidence was insufficient with respect to Counts One through Six.

**15.** Berardi also asserts that the jury's verdicts were inconsistent. Absent very unusual circumstances, however, inconsistent verdicts are permissible, even if the verdicts are the result of compassion or compromise by the jury. *Dunn v. United States*, 284 U.S. 390, 52 S.Ct. 189, 76 L.Ed. 356 (1932); *United States v.*

*Niemiec*, 611 F.2d 1207, 1210 (7th Cir. 1980). The two cases relied on by Berardi are inapposite. In *United States v. Hannah*, 584 F.2d 27 (3d Cir. 1978), the prosecution tried the case on the theory that, and the jury was instructed to convict if it found that, the felony charged in one count was the predicate for a separate count of criminal facilitation. Obviously, under these circumstances the two counts could not be treated as separate indictments, and acquittal on the felony count precluded conviction for facilitation. In *United States v. Bethea*, 483 F.2d 1024 (4th Cir. 1973), the two verdicts posited a logical impossibility, as evidence introduced to prove the elements of one offense directly negated the elements of another offense charged in a separate count. None of these unusual circumstances were present in the instant case, and, moreover, the jury verdicts were not inconsistent. The jury could well have believed beyond a reasonable doubt that Berardi instructed Heiden to give false testimony to the grand jury and yet not have found proof beyond a reasonable doubt that Berardi was guilty of mail fraud and extortion as charged.

841, 101 S.Ct. 120, 66 L.Ed.2d 48 (1980); *United States v. Pacente*, 503 F.2d 543, 547 (7th Cir.) (en banc), *cert. denied*, 419 U.S. 1048, 95 S.Ct. 623, 42 L.Ed.2d 642 (1974). The jury's return of a guilty verdict only on Count Seven is further indication that the jury was able to sift the evidence and to weigh the merits of each count separately. *United States v. Thomas*, 610 F.2d 1166, 1170 (3d Cir. 1979). Taking all of these considerations into account, we hold that Berardi has failed to meet his heavy burden of demonstrating such prejudice from the joinder of counts as to render the district court's denial of the severance motion an abuse of discretion.

## IV.

■■■ Berardi's final argument is that the evidence was insufficient to support the guilty verdict on Count Seven.[16] Count Seven charged him with three acts of obstruction committed in furtherance of his overall effort to influence Heiden to testify falsely to the grand jury. The three acts were alleged to have occurred "[i]n and around April 1979," "[i]n and around June 1979," and "[i]n and around July 1979," respectively. The jury was instructed to find Berardi guilty on Count Seven if it was unanimous in concluding that he did at least one of the acts charged. So instructed, a general verdict of guilty on such a count charging multiple acts may be upheld only if there is sufficient evidence to support the charge as to *each* of the acts alleged. The reason for this rule is that, with the "one-is-enough" instruction that was given here, it would be impossible to determine whether the jury based its decision on

an act for which there were insufficient evidence or which did not constitute a violation of law (if one or both of these conditions pertained). *United States v. Talkington*, 589 F.2d 415, 417–18 (9th Cir. 1978) (per curiam); *United States v. Tarnopol*, 561 F.2d 466, 474 (3d Cir. 1977). We therefore consider each of the acts of obstruction alleged in Count Seven and conclude that there was sufficient evidence to support a verdict of guilty on all three.

### A. The April 1979 Act

Count Seven charged that, "[i]n and around April 1979," Berardi instructed Heiden that, if questioned, he should testify falsely that he had personally ordered and paid for the property appraisals, that he attended a Board hearing on the property assessment reductions, and that he did not pay Berardi any money in connection with Gateway Chevrolet's tax reductions. There was evidence at trial—primarily the testimony of Heiden—that Berardi had in fact committed the act charged during a conversation with Heiden in late March or early April of 1979.

Over Berardi's objection, the jury was given the following instruction:

> Under the obstruction of justice statute, a witness is a person who knows or is presumed to know the facts material to a pending grand jury proceeding and is a person whom *the defendant* expects may be called to testify by that grand jury.
>
> It is not necessary that the witness actually have been subpoenaed by the grand jury at the time of the corrupt endeavor to influence the witness' testimony.

---

**16.** Berardi's motion for judgment of acquittal was denied at the close of the government's case. He failed to renew the motion at the close of all of the evidence and he did not file a post-trial motion within the 20-day period allotted to him by the district court under Rule 29(c) of the Federal Rules of Criminal Procedure. Such failure to file a timely motion for judgment of acquittal constitutes a waiver on appeal of any challenge to the sufficiency of the evidence. *United States v. Moorman*, 358 F.2d 31, 33–34 (7th Cir.), *cert. denied*, 385 U.S. 866, 87 S.Ct. 127, 17 L.Ed.2d 93 (1966); *United States v. Childress*, 347 F.2d 448, 451–52 (7th

Cir. 1965), *cert. denied*, 384 U.S. 1012, 86 S.Ct. 1936, 16 L.Ed.2d 1030 (1966). A conviction may be reversed in the face of such an omission only where the defendant demonstrates a manifest miscarriage of justice. *United States v. Kilcullen*, 546 F.2d 435, 441 (1st Cir. 1976), *cert. denied*, 430 U.S. 906, 97 S.Ct. 1175, 51 L.Ed.2d 582 (1977); *United States v. Jones*, 486 F.2d 1081, 1082–83 (5th Cir. 1973). In the instant case, we find no manifest miscarriage of justice in the jury's verdict and, indeed, as explained below, we find that there was sufficient evidence to support the verdict even under the normal standard of review.

Tr. 949–50 (emphasis supplied). Berardi now argues that this instruction erroneously defined "witness" for the purposes of 18 U.S.C. § 1503, in that it required only Berardi, and not also Heiden, to have expected that Heiden would be called as a witness by the grand jury. Berardi contends that, in order to be a "witness" within the meaning of section 1503, Heiden must also have intended or expected to testify. Because Heiden did not so intend or expect to testify at the time of the April 1979 conversation, Berardi reasons, he cannot be found liable for obstruction of justice under section 1503.

A "witness" under section 1503 is one who knows or is expected to know material facts and is expected to testify to them or to be called on to testify. *United States v. Chandler*, 604 F.2d 972, 974 (5th Cir. 1979), *cert. dismissed*, 444 U.S. 1104, 100 S.Ct. 1074, 63 L.Ed.2d 317 (1980); *United States v. Griffin*, 463 F.2d 177, 179 (10th Cir.), *cert. denied*, 409 U.S. 988, 93 S.Ct. 34, 34 L.Ed.2d 254 (1972); *United States v. Grunewald*, 233 F.2d 556, 571 (2d Cir. 1956), *rev'd on other grounds*, 353 U.S. 391, 77 S.Ct. 963, 1 L.Ed.2d 931 (1957); *Odom v. United States*, 116 F.2d 996, 998 (5th Cir.), *rev'd on other grounds*, 313 U.S. 544, 61 S.Ct. 957, 85 L.Ed. 1511 (1941). At issue in this case is the question whether the phrase, "is expected to testify," refers to the expectation of the defendant, the putative witness, or both. Berardi relies on *Berra v. United States*, 221 F.2d 590 (8th Cir. 1955), *aff'd on other grounds*, 351 U.S. 131, 76 S.Ct. 685, 100

L.Ed. 1013 (1956), in support of his argument that Heiden was not a "witness." In *Berra* the court did expressly reject the argument that the defendant's expectation that a person will testify is itself sufficient to make that person a "witness" under the obstruction of justice statute. In so doing, the court separated, for purposes of analysis, the definition of "witness" from the statute's scienter requirement. Berardi is thus correct that *Berra* holds that, in order to be a "witness" under section 1503, the ostensible witness must himself expect or intend to testify in a federal judicial proceeding.

For at least two reasons, however, we must reject Berardi's argument that Heiden was not a "witness." [17] Most importantly, we do not believe that the *Berra* decision (which is unique insofar as we have been able to determine) [18] represents a correct interpretation of the statute. The overarching purpose of section 1503 is to protect participants in federal judicial proceedings from corrupt influence and interference that impedes the due administration of justice. *United States v. Chandler*, 604 F.2d 972, 974 (5th Cir. 1979), *cert. dismissed*, 444 U.S. 1104, 100 S.Ct. 1074, 63 L.Ed.2d 317 (1980). Consistent with this purpose, the courts have defined "witness" with an emphasis on substance rather than form. *Chandler*, 604 F.2d at 974. Berardi asks us to read section 1503 so as to permit a defendant who is aware of pending judicial proceedings against him to interfere with or

---

**17.** Berardi tendered his own jury instruction containing a definition of "witness" derived from the *Berra* case. That instruction, however, was properly rejected by the district court, wholly apart from its incorporation of the *Berra* holding. The tendered instruction erroneously stated that a person could not be a "witness" if he were not under subpoena. It is well-established, however, that a person can be a "witness" even if he has not been served with a subpoena. *United States v. Chandler*, 604 F.2d 972, 974 (5th Cir. 1979), *cert. dismissed*, 444 U.S. 1104, 100 S.Ct. 1074, 63 L.Ed.2d 317 (1980); *Cotton v. United States*, 409 F.2d 1049, 1054 (10th Cir. 1969), *cert. denied*, 396 U.S. 1016, 90 S.Ct. 577, 24 L.Ed.2d 507 (1970). No alternative instruction offering only the *Berra* definition of "witness" was tendered by Berardi, and he is thus in no position to complain

about the instruction that was given by the court.

**18.** Almost all of the cases considering the "witness" question in the context of section 1503 have spoken entirely in terms of the *defendant's* expectation that a person will testify. *See, e.g., United States v. Raineri*, 670 F.2d 702, 718–19 (7th Cir. February 8, 1982); *United States v. Chandler*, 604 F.2d 972, 975 n.6 (5th Cir. 1979), *cert. dismissed*, 444 U.S. 1104, 100 S.Ct. 1074, 63 L.Ed.2d 317 (1980); *Odom v. United States*, 116 F.2d 996, 999 (5th Cir.), *rev'd on other grounds*, 313 U.S. 544, 61 S.Ct. 957, 85 L.Ed. 1511 (1941). *See also Pettibone v. United States*, 148 U.S. 197, 206, 13 S.Ct. 542, 546, 37 L.Ed. 419 (1893).

influence a person who may as yet be unaware either of the existence of those proceedings or of the likelihood that he may be called to testify. This view, however, runs counter to the protective policies of the statute, as it would expose putative witnesses to precisely the same types of corrupt influence as are outlawed by the statute, simply because the putative witness does not expect to testify or is unaware of pending judicial proceedings. This kind of corrupt influence could occur regularly for it will often be the case that a criminal defendant knows, even before law enforcement officials, which persons possess information which may incriminate him. We decline to construe section 1503 to create such an opportunity for defendants bent on obstructing justice. We think it is more consonant with the purposes of the statute to focus on the mental state of the defendant.

█ We thus hold that a person need not always intend or expect to testify in order to be a "witness" within the meaning of section 1503. In the instant case, Heiden was a "witness" at the time of the April conversation because Berardi, the defendant, expected him to testify before the grand jury and he was in fact called to testify. Accordingly, the jury was properly instructed and sufficient evidence was presented supporting the jury's verdict.[19]

### B. The June 1979 Act

As the second act of obstruction, Count Seven alleged that "[i]n and around June 1979," Berardi again instructed Heiden to make false statements concerning the real estate assessments of Gateway Chevrolet. In support of this charge, Heiden testified at trial that this second of three contacts with Berardi occurred at "the end of June, but July sort of rings a bell." Tr. 189. Heiden stated that the conversation with

Berardi took place immediately after the FBI questioned Heiden, an interview recalled by Agent Olson of the FBI to have occurred on July 17. On the basis of this ambiguity concerning the actual date on which the second act of obstruction was committed, Berardi contends that the government adduced no evidence of a June 1979, as opposed to a July 1979, act.

Berardi's assertion is refuted by the terms of the indictment, the instructions to the jury and by Heiden's own testimony. Heiden testified to three separate contacts with Berardi, corresponding to the three acts charged in Count Seven. Heiden said the second act occurred in late June or in July. The indictment alleged that the act occurred "[i]n and around June 1979." The jury was told that, "Although the evidence need not establish with certainty the exact date of the alleged offenses, it must establish that the offenses were committed on dates reasonably near the dates charged." Tr. 935–36. We conclude that Heiden's testimony, taken together with the jury instruction that was given, provided sufficient evidence to submit to the jury the allegation of an act of obstruction occurring, "[i]n and around June 1979."

### C. The July 1979 Act

The third and final act charged in Count Seven involves Berardi's instruction to Heiden "[i]n and around July 1979," to state falsely, if questioned, that no money was exchanged between the two in connection with Gateway Chevrolet's property assessments. Heiden at trial gave testimony supporting the charge, and Berardi's only argument here is that there was a genuine conflict in the accounts given by the various witnesses. It is the province of the jury, however, to weigh the evidence and determine credibility. *United States v. Niemiec,*

---

19. We note in addition that there is substantial doubt whether *Berra,* if applied, would require us to hold that Heiden was not a "witness." The evidence shows that when Berardi instructed Heiden in April of 1979 to testify falsely about the property assessment reductions, he specifically mentioned the grand jury. This reference indicates strongly that Heiden was

thereby made aware of the grand jury's investigation and the likelihood that he would be called to testify. Heiden may well have expected to testify and, thus, been a "witness" even under the Berra definition. *See Stein v. United States,* 337 F.2d 14, 21–22 (9th Cir. 1964), *cert. denied,* 380 U.S. 907, 85 S.Ct. 889, 13 L.Ed.2d 795 (1965).

611 F.2d 1207, 1211 (7th Cir. 1980). Any inconsistencies or ambiguities that may have been disclosed in the testimony are for the jury to resolve, and we will not disturb its resolution of them. *United States v. Consolidated Packaging Corp.*, 575 F.2d 117, 128 (7th Cir. 1978). There was sufficient evidence from which the jury could find Berardi guilty beyond a reasonable doubt of the July 1979 act of obstruction.

Thus we conclude that the commission of each of the three acts alleged in Count Seven was supported by evidence sufficient to sustain the jury's verdict.

## V.

For the reasons stated herein, we affirm Berardi's conviction for obstruction of justice.

AFFIRMED.