931 F.2d 58
 UNPUBLISHED DISPOSITION
NOTICE: Seventh Circuit Rule 53(b)(2) states unpublished orders shall not be cited or used as precedent except to support a claim of res judicata, collateral estoppel or law of the case in any federal court within the circuit.
UNITED STATES of America, Plaintiff-Appellee,
v.
Alta SHELL, Defendant-Appellant,
 No. 90-2401.
 United States Court of Appeals, Seventh Circuit.
 Submitted April 11, 1991.*
Decided April 17, 1991.
 
 Before POSNER, FLAUM and KANNE, Circuit Judges.
 
 ORDER
 
 1
 Alta Shell and four co-defendants were charged in a four-count indictment. She and the co-defendants were charged in Count 1 with conspiracy to distribute cocaine in violation of 21 U.S.C. Sec. 846. A jury convicted Shell of conspiracy to distribute cocaine. The district court sentenced Shell to 120 months' imprisonment to be followed by four years' supervised release. Shell appeals. She argues that the evidence was not sufficient to support her conviction. We affirm.
 
 
 2
 The government suspected Tommie Montgomery of operating a crack house out of his residence in Fort Wayne, Indiana. The government enlisted the help of a confidential informant, Edwin Scheele, who made a number of undercover contacts with the operation at Montgomery's residence. Although Montgomery was the focus of the investigations, a number of other individuals came to the government's attention. Tarza "Todd" Tell and his associate, Shelby Lauderdale, were suppliers to Montgomery's operation. Claver James Walker did odd jobs around the crack house for Montgomery and frequently answered the door and handled the money when customers stopped by. Shell managed the operation on weekends which Montgomery spent at hotels. Montgomery testified that he would "front" Shell cocaine. She in turn would "cook" it into rock form, "crack" cocaine, and sell it. Montgomery testified that he did not know whether cocaine was sold from his residence, but heard that a lot of people bought cocaine there over the weekends. When Montgomery returned after the weekend, Shell would pay him with the proceeds from the weekends' sales.
 
 
 3
 Donald Campbell, a customer of the Montgomery operation, testified that he had purchased crack from both Montgomery and Shell at the crack house. When he dealt with Shell, he would tell her how much he wanted to spend, and she would tell him how much his money would buy. On occasion, Campbell gave his money to Walker who took it to Shell and brought the crack back to Campbell.
 
 
 4
 Scheele was also a frequent customer of the crack house who bought from both Montgomery and Shell. Scheele testified that he had incurred a significant drug debt. At one point during the investigation, Scheele met with Montgomery and Shell to discuss this debt, and the conversation was tape recorded. The tape was admitted into evidence and played for the jury. In addition, Montgomery testified that the debt was to both him and Shell.
 
 
 5
 Because Shell failed to move for judgment of acquittal at trial, she must show a miscarriage of justice to prevail on her sufficiency claim. See United States v. Berardi, 675 F.2d 894, 902 n. 16 (7th Cir.1982). This she cannot do. It does not matter that Shell did not know Tell or Lauderdale. A defendant need not know each co-conspirator. See United States v. Adamo, 882 F.2d 1218, 1224 (7th Cir.1989). Shell suggests that she was in a mere buyer-seller relationship with Montgomery. The evidence indicates that Shell did not just buy from Montgomery, but that she took over his operation on weekends. From the apparently sizeable business Shell did on weekends, a reasonable jury could conclude that Shell was aware of the scope of Montgomery's operation. Montgomery placed Shell in a position of trust by making her the "weekend manager". In addition, Montgomery fronted Shell resale quantities of cocaine. Further evidence of their collaborative efforts was revealed in Scheele's and Montgomery's testimony that Montgomery and Shell together met with Scheele to resolve the problem of the debt he owed to them jointly. There was no miscarriage of justice in this case.
 
 
 6
 AFFIRMED.
 
 
 
 *
 After preliminary examination of the briefs, the court notified the parties that it had tentatively concluded that oral argument would not be helpful to the court int his case. The notice provided that any party might file a "Statement as to Need of Oral Argument." See Fed.R.App.P. 34(a); Circuit Rule 34(f). No such statement having been filed, the appeal has been submitted on the briefs and record