**UNITED STATES of America**

v.

**William P. CATENA, M.D.,**
**Appellant.**

**No. 74–1054.**

United States Court of Appeals, Third Circuit.

Argued May 29, 1974.

Decided July 22, 1974.

Stanley W. Greenfield, Greenfield & Minsky, Pittsburgh, Pa., for appellant.

David M. Curry, Asst. U. S. Atty., Richard L. Thornburgh, U. S. Atty., Pittsburgh, Pa., for appellee.

Before ROSENN and HUNTER, Circuit Judges, and HANNUM, District Judge.

## OPINION OF THE COURT

ROSENN, Circuit Judge.

The defendant, a physician, was tried to a jury and convicted of ten counts of an indictment for fraudulently submitting false Medicare claims for payment. We affirm.

Each count of the indictment upon which the defendant was convicted was in the following form:

On or about [date], at Carnegie, in the County of Allegheny, in the Western District of Pennsylvania, defendant William P. Catena, M.D., presented and caused to be presented to an agency of the United States under the Health Insurance for the Aged Act, a claim against the United States for medical services supplied and rendered to [name and address of patient] for [number] house calls, on [dates of treatment], pursuant to the provisions of the Health Insurance for the Aged Act, knowing the said claim to be false, fictitious, and fraudulent in that no medical services were supplied and rendered by William P. Catena, M.D.,

to the said [name of patient] on said dates.

In violation of Section 287 of Title 18, United States Code.

We first consider the question of whether the evidence most favorable to the Government shows acts which constitute violations of the statute under which the defendant was indicted and convicted.[1]

■ 18 U.S.C. § 287 makes illegal the fraudulent presentation of claims "to any person or officer in the civil . . . service of the United States, or to any department or agency thereof . . . ."[2] The evidence at trial indicated, however, that the defendant had submitted the allegedly fraudulent claims to Pennsylvania Blue Shield (Blue Shield) and to the Travelers Insurance Company (Travelers), rather than directly to any federal official or federal agency.

The Government tried the case on the theory that Blue Shield and Travelers were agencies of the United States within the meaning of § 287. The Government contended that the defendant, by submitting false claims to these private insurance carriers, had submitted false claims to agencies of the United States in violation of § 287. In support of this theory, the Government introduced at trial the contracts between federal agencies and each of the insurance carriers.[3]

---

1. Although the defendant has not directly raised this issue on appeal, we consider it on our own motion for three reasons. First, the defendant raised this issue in the district court, and raises a related issue on this appeal by his challenge to the court's charge to the jury, *see* pp. 1324–1326 *infra*. Second, as the Supreme Court has recently reiterated, "a claim that a conviction is based on a record lacking any evidence relevant to crucial elements of the offense is a claim with serious constitutional overtones," Anderson v. United States, 417 U.S. 211, 223, 94 S.Ct. 2253, 2261–2262 n. 12, 41 L.Ed.2d 21 (1974), and we believe, as did the Court in *Anderson,* that the "interests of justice" require its consideration here. In any event, the defendant, in reliance upon *Anderson,* could apparently raise the claim in a petition for certiorari to this court. We believe that our consideration of the issue at this point would possibly avoid a later remand. Finally, we are con-

cerned that our failure to comment on the issue might be construed as approval of the district court's rationale for its disposition of the case.

2. 18 U.S.C. § 287 provides:
 Whoever makes or presents to any person or officer in the civil, military, or naval service of the United States, or to any department or agency thereof, any claim upon or against the United States, or any department or agency thereof, knowing such claim to be false, fictitious, or fraudulent, shall be fined not more than $10,000 or imprisoned not more than five years, or both.

3. One contract ran between Blue Shield and the Department of Health, Education and Welfare. The other contract ran between Travelers and the Railroad Retirement Board.

These contracts provided that the carriers would process and pay Medicare claims, in return for federal reimbursement for claims paid and for administration costs. The district court, in its opinion denying the defendant's posttrial motions, accepted the Government's theory that these reimbursement provisions made the insurance carriers agencies of the United States.

We have considerable doubt that Blue Shield and Travelers may be considered "agencies" of the United States for purposes of the criminal prohibition of § 287, regardless of their contractual arrangements with the United States. 18 U.S.C. § 6 states that for purposes of Title 18,

> [t]he term "agency" includes any department, independent establishment, commission, administration, authority, board or bureau of the United States or any corporation in which the United States has a proprietary interest, unless the context shows that such term was intended to be used in a more limited sense.

The final phrase of this definition indicates that the prior terms were intended as the *outer* limits of the definition of agency, and, given the criminal nature of the statute, it would be difficult to contend that private organizations with reimbursement contracts with the United States fell within any of the definitional terms.[4]

We need not decide this question, however, because we believe that the indictment and proof were sufficient to sustain the conviction on the theory that the defendant "caused" the private insurance carriers themselves to submit his false claims to the Department of Health, Education and Welfare (HEW)

and to the Railroad Retirement Board, which are clearly federal agencies.

In United States ex rel. Marcus v. Hess, 317 U.S. 537, 63 S.Ct. 379, 87 L. Ed. 443 (1942), the Supreme Court was called upon to construe R.S. § 5438, the forerunner of § 287, which at the time began with the language:

> Every person who makes or causes to be made, or presents or causes to be presented, for payment or approval, to or by any person or officer in the civil . . . service of the United States, any claim upon or against the Government of the United States, or any department or officer thereof, knowing such claim to be false, fictitious, or fraudulent . . . .

In *Hess*, the Court held that when private contractors engaged in collusive bidding practices on contracts made with local governmental units, and when a large portion of the money paid the successful contractors by the state was of federal origin, then the contractors were "causing to be presented" a "claim upon or against the Government." 317 U.S. at 544, 63 S.Ct. at 384. Were the old version of the statute which was at issue in *Hess* presently in force, the defendant in the instant case could have been convicted of "causing" the innocent insurance carriers to present his fraudulent claims to the United States.

■ It may be contended, however, that the revised version of the statute, which refers to presenting false claims to an agency of the United States but not to *causing* false claims to be presented, precludes conviction of the defendant on the theory of *Hess*. We do not believe that this conclusion would be correct. The "cause" language of ·the former version of § 287 has clearly been

---

4. The Reviser's Note to § 6 states that "[i]t was considered necessary to define clearly these words ["department" and "agency"] in order to avoid possible litigation as to the scope or coverage of a given section containing such words."

The district court relied in part upon United States v. Waters, 457 F.2d 805 (3d Cir. 1972). That case, however, was concerned

with the provision of 18 U.S.C. § 1001, referring to "any matter within the jurisdiction of a department or agency of the United States." That statutory language . is broader on its face than the language of § 287. The district court also relied upon United States ex rel. Marcus v. Hess, 317 U.S. 537, 63 S.Ct. 379, 87 L.Ed. 443 (1942), discussed *infra*.

replaced by 18 U.S.C. § 2(b),[5] which states that

> [w]hoever willfully causes an act to be done which if directly performed by him or another would be an offense against the United States, is punishable as a principal.

Just as under the former version of § 287 at issue in *Hess,* under the combination of the present version of § 287 and the present § 2(b) a person may be guilty of causing a false claim to be presented to the United States even though he uses an innocent intermediary (in this case the insurance carriers) to actually pass on the claims to the United States. *See* Pereira v. United States, 347 U.S. 1, 8–9, 74 S.Ct. 358, 98 L.Ed. 435 (1954).[6]

■■ We further note that the indictment in this case was sufficient to sustain the conviction under this theory. The text of each count accused the defendant of "present[ing] and caus[ing] to be presented" a false claim to an agency of the United States. While the indictment did not by its terms refer specifically to § 2(b), but rather referred only to § 287, this omission is not fatal. United States v. Koptik, 300 F.2d 19, 22 (7th Cir.), cert. denied, 370 U.S. 957, 82 S.Ct. 1609, 8 L.Ed.2d 823 (1962); Londos v. United States, 240 F.2d 1, 7 (5th Cir.), cert. denied, 353 U.S. 949, 77 S.Ct. 860, 1 L.Ed.2d 858 (1957). In terms of giving notice to the defendant of the crime for which he is charged, the bare citation of § 2(b) adds little to the specific language of the indictment charging him with "causing" a false claim to be submitted.[7]

Even though we have found that the evidence *most favorable to the Government* was sufficient to sustain the defendant's conviction under § 287, this does not dispose of the defendant's contention concerning the court's charge to the jury on this "agency" issue. An improper charge by the trial court might have permitted the jury to convict the

5. The Reviser's Note to § 287 states that "[r]eference to persons causing or procuring was omitted as unnecessary in view of definition of 'principal' in section 2 of this title." The Reviser's Note to § 2 states that "Section 2(b) is added to permit the deletion from many sections throughout the revision of such phrases as 'causes or procures'." This modification of language did not represent a substantive change in Title 18. *See* Pereira v. United States, 202 F.2d 830, 836–837 (5th Cir. 1953), aff'd, 347 U.S. 1, 74 S.Ct. 358, 98 L.Ed. 435 (1954).

6. In *Pereira,* the defendant had deposited a fraudulently procured check drawn on a Los Angeles bank into his El Paso bank account. The innocent Texas bank mailed the check to California for collection. Citing § 2(b), the Court held that the defendant had been properly convicted for "causing" the check to be mailed across state lines. The Court stated that "[w]here one does an act with knowledge that the use of the mails will follow in the ordinary course of business, or where such use can reasonably be foreseen, even though not actually intended, then he 'causes' the mails to be used." 347 U.S. at 8–9, 74 S.Ct. at 363. *Cf.* United States v. Maze, 414 U.S. 395, 399, 94 S.Ct. 645, 38 L.Ed.2d 603 (1974).

7. We find no prejudice to the defendant from our holding that the conviction can be affirmed on a theory other than that relied upon by the trial court and the Government. First, the defendant cannot claim a lack of opportunity to show that he did not "cause" the private carriers to submit his Medicare claims to the Government for reimbursement. He had full opportunity to explore the relationship between the carriers and the Government in order to support his contention at trial that the carriers were not agencies of the United States. This relationship was clearly shown by the reimbursement contracts between the carriers and the Government.

Moreover, it would have been futile for the defendant to contend at trial that he did not know that the claim forms he sent to the carriers would ultimately be paid out of the federal treasury. The forms each contained the heading, in large letters, "Request for Medicare Payment," and on the next line, "Medical Insurance Benefits—Social Security Act." In the lower right hand corner was the notation, in small letters, "Department of Health, Education, and Welfare, Social Security Administration." In fact, the only indication that the form was not to be submitted directly to the Government was the address section, which listed "Medicare/Pennsylvania Blue Shield/Box 65/Camp Hill, Pa. 17011."

defendant on evidence which would be sufficient to constitute a violation of the statute.

 The court charged the jury that

[t]here are two essential elements to this offense, and the Government must prove each of these elements beyond a reasonable doubt . . . . The elements—that is what constitutes this or the definition of the offense requires that there is an act .or acts of making and using or causing to be made a false writing or document, a claim to a *matter within the jurisdiction of the United States.* One, is the claim false, and knowing that the claim is false and doing it knowingly and wilfully. [Emphasis supplied.] [8]

The defendant, who did not object to the italicized portion of the charge at trial, now contends that it was error because it is broader than the literal requirement of § 287 that the claim be made to an agency of the United States. In view of 18 U.S.C. § 2(b), we need only compare the court's instructions on this point with the requirement that the defendant cause a false claim to be submitted to an agency of the United States.

We do not believe that the charge constitutes plain error requiring a reversal of the conviction.

We first note that

[i]n determining the effect of [the] instruction on the validity of respondent's conviction, we accept at the outset the well-established proposition that a single instruction to a jury may not be judged in artificial isolation, but must be viewed in the context of the overall charge.

Cupp v. Naughten, 414 U.S. 141, 146–47, 94 S.Ct. 396, 400, 38 L.Ed.2d 368 (1973). When so viewed, we do not believe the jury was misled by the superfluous reference to "a claim to a matter within the jurisdiction of the United States." The objectionable phrase was preceded at length by the trial court's description of the offense as charged in the indictment. This was followed by the trial court's reading of the statute upon which the indictment was predicated, § 287, and an explanation of the essential elements of the offense, including the act of "making . . . or causing to be made a false writing or document, *a claim to a matter within the jurisdiction of the United States."* The objectionable but superfluous language italicized above was qualified by the following instruction:

It is fraudulent if it is . . . made or caused to be made with the intent to deceive the Government agency to which it is submitted.

Looking at the charge as a whole, we do not believe that the jury was misled.

Even assuming, however, that the jury was influenced by the overly broad phrase in the instruction referring to "a matter within the jurisdiction of the United States," we believe that there is an alternative reason why the charge is not plain error. In Anderson v. United States, —— U.S. ——, 94 S.Ct. 2253, 41 L.Ed.2d 21 (1974), the defendants had been indicted for conspiring to cast fictitious votes for federal, state, and local offices in a primary election, in violation of 18 U.S.C. § 241. The court's charge to the jury did not distinguish between the federal and state candidates who were on the election ballot, and indicated only that conspiracy to cast false votes in the primary election would constitute a violation of the statute. The defendants contended on appeal that § 241 reached only conspiracies to cast fraudulent votes for candidates for *federal* offices, and that their convictions should be reversed because the jury charge permitted a conviction if the jury found a conspiracy directed solely to *state* offices.

---

8. The trial court apparently based the italicized portion of the charge upon the actual language of 18 U.S.C. § 1001. *Cf.* United States v. Matanky, 482 F.2d 1319 (9th Cir.), cert. denied, 414 U.S. 1039, 94 S.Ct. 539, 38 L.Ed.2d 329 (1973).

The Supreme Court found it unnecessary to reach the question of whether § 241 reached conspiracies to cast fraudulent votes for candidates for state offices, affirming the convictions even under the assumption that the statute only reached candidates for federal offices. The Court stated:

While the District Court's jury instructions did not specifically focus upon the conspiracy to cast false votes for candidates for *federal* offices, no objection was made at trial or before the Court of Appeals with respect to this aspect of the instructions. See Johnson v. United States, 318 U.S. 189, 200, [63 S.Ct. 549, 87 L.Ed. 704] (1943); Adickes v. S. H. Kress & Co., 398 U.S. 144, 147 n.2, [90 S.Ct. 1598, 26 L.Ed.2d 142] (1970). And, even assuming *arguendo* that § 241 is limited to conspiracies to cast false votes for candidates for federal offices, we could find no plain error here. The prosecution's case, as indicated earlier, showed a single conspiracy to cast entire slates of false votes. The defense consisted in large part of a challenge to the credibility of the Government's witnesses, primarily the three unindicted coconspirators. The case therefore ultimately hinged on whether the jury would believe or disbelieve their testimony. Given the record, we think it inconceivable that, even if charged by more specific instructions, the jury could have found a conspiracy to cast false votes for local offices without finding a conspiracy to cast false votes for the federal offices as well.

The principle of *Anderson* also applies to the instant case. Just as in *Anderson,* the defendant contends for the first time on appeal that the court's charge permitted the jury to convict on find-ings which in themselves would not constitute a violation of the statute. Just as did the Court in *Anderson,* however, we find it "inconceivable" that the error in the charge affected the outcome of the jury deliberations. The issue on the trial of these ten counts was the question of whether or not the defendant had fraudulent intent in submitting the claims for house calls for dates on which he concededly did not make the calls. The case turned entirely upon credibility, upon whether or not the jury would believe his testimony and that of his nurse/aide. No dispute existed over the factual nature of the relationship between the private insurance carriers and the federal government, and no such issue could possibly have arisen since the complete reimbursement contracts were introduced into evidence. The legal consequence of these relationships was for the trial court. We have held that the court could have properly submitted the case to the jury on the theory that the evidence was sufficient to show that the defendant caused a false claim to be presented to an agency of the United States. The jury by its conviction indicated that it found the claims at issue were fraudulent and related to matters which were "within the jurisdiction of the United States." We believe it "inconceivable" that the jury would not also have found that the defendant caused the fraudulent claims to be submitted to an agency of the United States.

The defendant next contends that the district court committed reversible error by denying his pre-trial motion, under Fed.Rule Crim.Proc. 14, to sever over 100 counts of the the indictment and try them separately. The court ultimately dismissed 27 of the counts, submitting to the jury 114 of the 141 counts on which the defendant had been indicted.[9]

9. The defendant requested severance of over 100 counts which related to allegedly false claims for office visits listed on the claim forms as having been made on dates that he was concededly out of town. The jury acquitted him on each of these counts, apparently believing his defense that the services listed on the claim forms had been provided by his nurse/aide or by his medical student son.

The ten counts upon which he was convicted, on the other hand, were those counts which involved claims for *house calls* made on dates that he was admittedly out of town. His only defense to these counts was that the listed dates were bookkeeping errors.

As noted, the jury found him guilty on 10 of the remaining 114 counts.

The defendant claims that the court's refusal to sever was prejudicial because

> [p]ermitting these over 100 counts to be submitted to the jury unnecessarily complicated the jury's consideration and was patently prejudicial to the defendant. Indeed, we suggest it is not the least bit unreasonable to suppose that absent these more than 100 counts, the likelihood of acquittal on the only 10 of which he was convicted would have been substantially enhanced. At least the possibility of a compromise verdict, as appears the likely result here, would have been dramatically reduced.

■■■ This court has consistently stated that denial of a severance by the trial court is not a ground for reversal absent an abuse of discretion by the trial court. Proof of such abuse of discretion requires affirmative evidence showing clear prejudice to the defendant. *See, e. g.,* United States v. Barber, 442 F.2d 517, 529 (3d Cir.), cert. denied, 404 U.S. 846, 92 S.Ct. 148, 30 L.Ed.2d 83 (1971); United States v. Weber, 437 F.2d 327, 332 (3d Cir. 1970), cert. denied, 402 U. S. 932, 91 S.Ct. 1524, 28 L.Ed.2d 867 (1971). We see no abuse of discretion by the trial court on the facts of this case. All of the claims at issue were made in a similar manner, on identical forms and for similar services. The amount of money involved in each claim was almost nominal, averaging $10 per count.[10] The same office records of the defendant were required for each count, and the witnesses who would have been required for each trial included the defendant himself, his nurse/aide, and Blue Cross and Travelers personnel. Moreover, the period over which the alleged violations took place was reasonably limited,[11] and the stipulated fact upon which the Government primarily relied (that the defendant was out of the country or traveling on the dates that services were claimed to have been provided) was the same for each count.

We do not believe that on these facts the defendant was entitled to put the Government to the expense and inconvenience of separate trials.[12] Nor do we consider that the defendant's generalized fears of a compromise verdict have sufficient basis to indicate that the refusal to sever was an abuse of discretion. We note that the trial court was careful to prevent confusion on the part of the jury as to which count was at issue at any given time; it plainly instructed the jury that each count was to be considered separately. The jury, likewise, was careful to convict only on those counts, interspersed throughout the indictment, relating to claims made for house calls.

■■ We finally consider the defendant's contention that the trial court erroneously admitted into evidence a written statement made by the defendant's attorney in the presence of the defendant. During a HEW investigation of the charges giving rise to the indictment, but before the institution of any criminal proceedings, HEW and Blue Cross investigators met with the defendant and his attorney. After discussion of certain irregularities in the defendant's claims, the defendant was handed a Social Security Form SSA–1760 which, testimony at trial indicated, was "usual-

---

10. The 114 counts submitted to the jury represented allegedly fraudulent claims aggregating $1339; only 80 percent of such Medicare claims (after a $50 annual deductible per patient) were reimbursable.

11. The periods covered were January 4–11, 1969; August 28–September 6, 1969; January 9–15, 1970; and July 2–10, 1970.

12. *See* United States v. Abrams, 29 F.R.D. 178 (S.D.N.Y.1961), denying motions for severance on 104-count indictment against six defendants. Although it is not clear how many of these counts actually went to the jury, the Court of Appeals ultimately affirmed the convictions of two defendants each convicted on the same seventeen counts, and one defendant convicted on a different seventeen counts. United States v. Abrams, 357 F.2d 539 (2d Cir.), cert. denied, 384 U.S. 1001, 86 S.Ct. 1922, 16 L.Ed. 2d 1014 (1966).

ly offered to people to give a voluntary statement to explain an irregularity." At the top of the form in large letters was the language "Voluntary Statement to Explain Irregularity." The defendant's name was filled in at the top of the form, and the blank space for the nature of the alleged irregularity read "billing for physician services under Medicare not rendered." [13] The form, which gave Miranda warnings and noted that any statement could be used in a criminal proceeding, stated that the signator knew that "[f]or purposes of the review, I may, if I choose to do so, make a statement explaining the circumstances surrounding the irregularity." [14]

The form was handed to the defendant. His lawyer, however, took the form from him and wrote on it, "There is no irregularity," signed his own name, and handed the form back to the investigators.

We believe that the question of whether the statement by the attorney was properly admitted as an admission by the defendant depends upon whether the statement was made within the scope of the attorney's authority at the time it was made. United States v. Dolleris, 408 F.2d 918, 921 (6th Cir.), cert. denied, 395 U.S. 943, 89 S.Ct. 2014, 23 L. Ed.2d 461 (1969). In this case it is clear that the attorney was acting within his authority in making the statement. The attorney took the form from the hands of the defendant and wrote on the form his statement denying irregularities. The defendant stood by and said nothing, implying that the attorney acted with his approval and consent. The defendant, who took the stand at trial, did not state that the attorney acted without his approval and consent. We therefore find no error by the trial court.

 We find without merit defendant's additional contention that he was denied a jury of his peers because of the rule of court that physicians in active practice who are called for jury duty may be excused upon individual request.

The judgment of the district court will be affirmed.

---

13. An investigator had used the phrase "possible billing . . ." but had crossed out the word "possible" at the request of defendant's attorney.

14. The form stated in full:

I understand that it is the policy of the Social Security Administration to require that all irregularities of the above nature be reviewed to determine whether there has been a violation of any penal provisions of the Social Security Act. (Where this review indicates there has been a violation, the file is referred to the Department of Justice for its consideration.) For purposes of the review I may, if I choose to do so, make a statement explaining the circumstances surrounding the irregularity.

I understand that this statement may be used against me in the trial of any criminal charges which the Government may bring regarding this matter. I further understand that I have the right to consult with a lawyer before giving any information or evidence and to have a lawyer present during any interview, and that I have the right to refuse to make any statement or to furnish any other evidence requested of me.

Understanding this, I hereby make the following statement voluntarily: