UNITED STATES of America

v.

Martin Thomas BRADLEY.

Crim. No. J–82–00095.

United States District Court,
D. Maryland.

June 9, 1982.

J. Frederick Motz, U. S. Atty., Michael Schatzow, Asst. U. S. Atty., Baltimore, Md., for plaintiff.

Fred Warren Bennett, Federal Public Defender, Stanley J. Reed, Asst. Federal Public Defender, Baltimore, Md., for defendant.

## MEMORANDUM AND ORDER

**SHIRLEY B. JONES,** District Judge.

Martin Thomas Bradley is charged with willfully causing a destructive substance to be placed in an aircraft used in interstate commerce, in violation of 18 U.S.C. § 32 (Count One); with transporting an explosive device in interstate commerce with the knowledge and intent that it would be used to kill and injure his wife and unlawfully damage an airplane, in violation of 18 U.S.C. § 844(d) (Count Two); and with willfully causing an explosive device to be placed aboard an aircraft intended for operation in air transportation, in violation of 49 U.S.C. § 1472(*l*)(1)(C) and (2) (Count Three). He has moved to dismiss the indictment as to Counts One and Three for lack of venue. The parties filed memoranda and oral argument was heard on June 8, 1982.

For the purposes of the venue motion, it is agreed that the Government could prove the following facts. On the evening of March 1 or early morning of March 2, defendant surreptitiously placed a bomb in his wife's packed, locked suitcase, without her knowledge and consent, at their home in Prince George's County, Maryland. Mrs. Bradley was scheduled to fly to Wichita Falls, Texas on March 2, 1982, and she had packed a suitcase earlier on the evening of March 1, 1982. The Bradleys left their home in Maryland around 6 a. m. on March 2, 1982 and drove to Washington National Airport in Alexandria, Virginia. Mr. Bradley had placed his wife's suitcase in the trunk of their car before leaving home. At Washington National, Mrs. Bradley checked in for a Braniff flight to Dallas/Ft. Worth, Texas, and her suitcase was placed on the airplane by Braniff employees. The bomb was discovered by Mrs. Bradley when she unpacked her suitcase at her destination.

Proper venue is a constitutional right, U.S.Const. Art. III, § 2 & amend. 6, and trial is to be held in the district in which the crime occurs, *id.*; 18 U.S.C. § 3237(a); 49 U.S.C. § 1473; F.R.Crim.P. 18. Some crimes necessarily occur in, and may be tried in, more than one district, such as those involving interstate activity. Others occur in more than one district because of the factual circumstances of the particular case. The "location" of some crimes may be difficult to pinpoint, and Congress may constitutionally provide for venue in a particular district or districts in such cases. This is true of airplane hijacking, for example. *See United States v. Busic*, 549 F.2d 252 (2d Cir. 1977).

To determine proper venue this Court must look to the nature of the offenses and the location of the acts constituting them. *United States v. Cores*, 356 U.S. 405, 408, 78 S.Ct. 875, 877, 2 L.Ed.2d 873 (1958); *United States v. Anderson*, 328 U.S. 699, 703, 66 S.Ct. 1213, 1216, 90 L.Ed. 1529 (1946). An approved method of determining venue is looking to the words defining the crime. *United States v. Kibler*, 667 F.2d 452, 454 (4th Cir. 1982). The pertinent language of 18 U.S.C. § 32 is "places or causes to be placed any destructive substance . . ."; that of 49 U.S.C. § 1472(*l*)(1)(C) is "placed, attempted to place or attempted to have placed aboard such aircraft any bomb . . . ."

Neither statute defines an offense that is inherently or in ordinary factual circumstances a continuing crime. The offense is placing or, in the case of 49 U.S.C. § 1472(*l*)(1)(C), attempting to place a bomb on an airplane. The situs will necessarily be the airport or other location of the aircraft or, in the case of attempts the airport or other location at which the attempt is made.[1] It is not the resultant injury or use of the device that constitutes the crime; the crime is committed when the device is,

---

1. "Attempted to have placed" could arguably be read as applicable to crimes elsewhere. It is quite clear from the context of the criminal sanctions in the statute and the legislative history that the Congressional purpose was to tighten security at airports, so as to prevent airplane hijackings, bomb incidents and the like. H.Rep.No.93–885, 93d Cong., 2d sess., reprinted in [1974] U.S.Code Cong. & Ad.News 3975, 3977; S.Rep. 93–13, 93d Cong., 1st sess. 21.

with the requisite intent, carried or otherwise placed on the airplane. If the crime had been committed by the defendant directly, it would unquestionably have occurred at Washington National Airport.

■ Defendant has been charged in counts one and three with *causing* a bomb to be placed on the aircraft in question. The language of 18 U.S.C. § 32 defines placing or causing a destructive substance to be placed aboard an aircraft as a crime. The charge of violation of 49 U.S.C. § 1472(*l*)(1)(C) arises not from the statutory language itself, but through 18 U.S.C. § 2(b). Subsection 2(b) provides that one who "willfully causes an act to be done which if directly performed by him or another would be an offense against the United States, is punishable as a principal." The general purpose of § 2(b) is to impose criminal liability as a principal upon one who acts through an intermediary, *e.g.*, *United States v. Ruffin*, 613 F.2d 408, 412–15 (2d Cir. 1979); *United States v. Maselli*, 534 F.2d 1197, 1200 (6th Cir. 1976); and one of the specific purposes of enactment was to make language such as "causes or procures" unnecessary in many criminal statutes, Revisors' Note to 18 U.S.C. § 2; *Maselli*, 534 F.2d at 1200; *United States v. Catena*, 500 F.2d 1319, 1322–23 & n.5 (3d Cir. 1974).

This Court has found nothing in the legislative history of 18 U.S.C. § 32 to indicate that inclusion of "causes to be placed" was intended to serve any purpose other than that which appears from the language and which is also served by 18 U.S.C. § 2(b), although the language may have been unnecessary after § 2(b) was enacted. *See Catena*, 500 F.2d at 1322–23. The legislative history indicates that 18 U.S.C. § 32

was intended to protect air transportation and the lives of persons traveling on airplanes. H.Rep.No.1979, 84th Cong., 2d sess., reprinted in [1956] U.S.Code Cong. & Ad.News 3145, 3145. It was modeled after similar provisions on destruction of railroads, *id.* reprinted at 3146; S.Rep. 1472, 84th Cong., 2d sess. 1, now codified at 18 U.S.C. § 1992, and shipping, now codified at 18 U.S.C. § 2275. Neither of the other statutes contains the "causes" language of 18 U.S.C. § 32. Congress may have had in mind the normal baggage handling procedures in adapting the statutes dealing with trains and ships to airplanes.

■ Subsection 2(b) of 18 U.S.C. is related to but differs from subsection 2(a). Both define persons who assist or act through others as principals subject to a principal's liability, and liability under the two provisions may overlap in particular factual circumstances. *See Maselli*, 534 F.2d at 1199–200. For a person to be an aider, abettor or accessory under § 2(a), there must be a principal who committed a crime.[2] *E.g., Ruffin*, 613 F.2d at 412. A person may be a causer of a crime under § 2(b), regardless of the culpability of the other through whom he acts. *Id.* at 412–14; *Catena*, 500 F.2d at 1323; *see Pereira v. United States*, 347 U.S. 1, 8–9, 74 S.Ct. 358, 362–363, 98 L.Ed. 435 (1954). He may act, as is alleged here, through completely innocent intermediaries. *Catena*, 500 F.2d at 1323.

The question presented on this motion is whether, when a defendant acts through innocent persons to cause a noncontinuing crime,[3] the location of his crime is the place where he does the "causing" or where the other does the acts that constitute the

---

**2.** It is not necessary that the principal be convicted, and anomalous cases exist in which the principal is acquitted but the abettor is, in a separate trial, found guilty. *See Ruffin*, 613 F.2d at 412. A finding that a principal has committed a crime is a predicate to a finding of guilt for an abettor, however. *Id.*

**3.** Defendant has been charged as a principal by his acts of causing crimes through third parties. Counts One and Three of the indictment cite

the substantive statutes and 18 U.S.C. § 2, which, as is the common practice in this district, is a charge of aiding and abetting. Despite the charge, on the agreed facts, Bradley would be guilty only as a principal having caused the bomb to be placed on the airplane. It has been agreed that Mrs. Bradley was unaware of the bomb in the suitcase, and no contention is made that Mr. Bradley might be guilty of aiding and abetting her as a principal.

crime, or both. In this case, venue is arguably proper in Maryland because Bradley's placing the bomb in his wife's suitcase "caused" it to be placed later on the aircraft, or in the Eastern District of Virginia, where Mrs. Bradley checked her suitcase and Braniff employees put it on the plane. The agreed facts indicate that Mr. Bradley did not simply put the bomb in his wife's suitcase in the expectation that she would go to the airport and put it, or have it placed, on the airplane. He apparently actually had control of the suitcase, which he had put in the trunk of their car, at least until they reached the airport. Viewed this way, it can be said that he did not actually "cause" the bomb to be placed on the aircraft until the Bradleys reached the airport. Venue would then be proper only in the Eastern District of Virginia.

The parties have cited no case precisely on point, and this Court has found only one that apparently holds that venue is proper in the district in which "causing" activities occurred, *United States v. Taller*, 394 F.2d 435, 437–38 (2d Cir. 1968), *cert. denied*, 393 U.S. 839, 89 S.Ct. 115, 21 L.Ed.2d 109 (1968). Taller was charged with causing misbranded drugs to be introduced in interstate commerce. His activities occurred in the Eastern District of New York, and the drugs were shipped from New Jersey to other states.

Another, more recent Second Circuit case holds to the contrary, although in the opposite situation. In *United States v. Chestnut*, 533 F.2d 40 (2d Cir.), *cert. denied*, 429 U.S. 829, 97 S.Ct. 88, 50 L.Ed.2d 93 (1976), the defendant was charged under 18 U.S.C. § 610 and 2(b) with causing another to accept and receive an illegal corporate campaign contribution. He argued that venue lay in Minnesota, where his acts causing receipt of the contribution took place, rather than New York, where the third party deposited the check for the contribution. The Court noted that the substantive offense was receiving and accepting the contribution and that § 2(b) did not itself

define a crime. *Id.* at 47. It went on to conclude that the crime was completed when the check was deposited in New York. *Id.* at 47–48.

The Fourth Circuit's opinion in *United States v. Walden*, 464 F.2d 1015 (4th Cir.), *cert. denied*, 409 U.S. 867, 93 S.Ct. 165, 34 L.Ed.2d 116 (1972), although not precisely on point, supports defendant's position. Ten defendants were charged in the District of South Carolina with conspiracy to commit bank larceny, conspiracy to receive stolen bank funds, conspiracy to transport stolen money in interstate commerce, and various defendants were charged with the substantive offenses of illegal bank entry and transporting stolen money. It was alleged in each count that defendants caused, in the District of South Carolina, the prohibited act to be done, but several of the banks were located in states other than South Carolina. *Id.* at 1017. The Court of Appeals held, with respect to the bank entry counts in other states, that the offense was not a continuing one and that venue lay only in the state where the banks were located. *Id.* at 1018. Rejecting an argument that the offenses had begun in South Carolina and continued elsewhere, the Court held that the crime of unlawful entry could only be committed where the banks were located. *Id.* at 1018–19. The Court went on to reject an argument that venue could be based on the various defendants' acts in South Carolina as accessories. *Id.* at 1019–20. Although the Government has argued that *Walden* does not rule out a contrary result in a case in which the facts more clearly demonstrate that a crime "began" in one district, the thrust of the Court's reasoning was that the crime of bank entry could only occur where the entry was made.

▮ The key to venue is the definition of the crime charged. Section 2(b) does not create new crimes, *it simply codifies a common law agency principle to impose liability.*[4] *E.g., Ruffin*, 613 F.2d at 412, 413–14;

---

4. The Government's argument that § 1473 should be afforded a liberal construction does

not dictate a different result in interpreting § 2(b) with § 1473. In 1974 Congress enacted

*Chestnut*, 533 F.2d at 47. In this respect it is unlike aiding and abetting, in which it is the helping of the principal that constitutes the crime. Based on the language of 18 U.S.C. § 32, and the absence of any contrary indication in the legislative history, a similar construction should be given to the "causes to" language in that statute. Where a noncontinuing crime is involved, it is not the "causing" that is important for venue purposes, but the consummation through the third party. In this case, the placing of the bomb aboard the aircraft occurred in the Eastern District of Virginia.

■ The Government has argued that even if "causing" is not the relevant language of the statutes, the *placing* of the bomb aboard the airplane began in Maryland and was completed in Virginia, making venue proper under 18 U.S.C. § 3237(a) and 49 U.S.C. § 1473(a). Certainly, Bradley's acts in Maryland led to, and were intended to result in, placement of the bomb on the airplane. The essential act, or element, of the crimes occurred, however, at Washington National Airport, where the bomb was placed on the airplane. Although the question is closer here than in *Walden*, these are also crimes in which the essential act occurs in one location, at the airplane itself or at the check-in area in the airport. *See Walden*, 464 F.2d at 1019. The legislative history of 49 U.S.C. § 1472(*l*) does not require a more liberal interpretation of when the crime of placing a bomb aboard an airplane begins for purposes of 49 U.S.C. § 1473(a) than for 18 U.S.C. § 3237(a). *See* note 4, *supra*. The result is the same with respect to Counts One and Three.

The motion to dismiss Counts One and Three is granted.

Pub.Law 93–366, containing two major parts. Title I, known as the Anti-Hijacking Act of 1974, was intended, among other purposes, to liberalize jurisdiction in airplane hijacking cases. H.Rep.No. 93–885, 93d Cong., 2d sess., reprinted in [1974] U.S.Code Cong. & Ad.News 3975, 3976–77; *see United States v. Busic*, 549 F.2d 252, 256–57 (2d Cir. 1977). Title II of the same law is known as the Air Transportation Security Act of 1974, and it was intended to deal with security at airports. H.Rep.No.93–885, 93d Cong., 2d sess., reprinted at [1974] U.S.Code Cong. & Ad.News 3975, 3977. Most of the provisions of Title II deal with the kinds of searches to be used at airports and allocate responsibility for protective measures at airports to the Federal Aviation Administration. The provisions codified at 49 U.S.C. § 1472(*l*) appear in Title II.

The language of § 1473(a) is no broader, except for crimes committed out of the jurisdiction of any district, than F.R.Crim.P. 18 and U.S.C. § 3237(a) provide for other offenses. The legislative history does not dictate an expansive interpretation of where the crime of placing a bomb aboard an airplane occurs.