

2002 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

3-14-2002

# USA v. Gumbs

Precedential or Non-Precedential:

Docket 1-1793

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2002

Recommended Citation

"USA v. Gumbs" (2002). *2002 Decisions*. Paper 175.
http://digitalcommons.law.villanova.edu/thirdcircuit_2002/175

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 2002 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

PRECEDENTIAL

        Filed March 14, 2002

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

No. 01-1793

UNITED STATES OF AMERICA

v.

LINCOLN GUMBS,

        Appellant

On Appeal from the District Court
of the Virgin Islands
(D.C. Criminal No. 97-cr-00005)
District Judge: Hon. Thomas K. Moore

Argued December 4, 2001

BEFORE: BECKER, Chief Judge, NYGAARD and COWEN,
Circuit Judges

(Filed March 14, 2002)

        STEPHEN A. BRUSCH, ESQ.
         (ARGUED)
        International Plaza, Suite 2G
        P.O. Box 988
        Charlotte Amalie, St. Thomas
        U.S. Virgin Islands, 00804

         Counsel for Appellant

          DAVID L. ATKINSON, ESQ.
          United States Attorney
          NELSON L. JONES, ESQ. (ARGUED)
          Assistant U.S. Attorney
          5500 Veterans Drive, Suite 260
          Charlotte Amalie, St. Thomas
          U.S. Virgin Islands, 00802-6424

           Counsel for Appellee

OPINION OF THE COURT

BECKER, Chief Judge.

Defendant Lincoln Gumbs, a contractor in the United States Virgin Islands, entered into construction contracts with the Government of the Virgin Islands ("GVI") to renovate a hospital and a high school gymnasium in St. Thomas. The contracts were funded by a grant from the United States Department of the Interior to the GVI for capital improvement projects. To receive compensation for work performed under the contracts, Gumbs would submit to the GVI periodic requests for payment. The GVI would send these requests to the United States Department of the Interior, which would wire the funds to a GVI bank account. Gumbs in turn received payments in the form of checks drawn on the GVI's account.

At issue here is Gumbs's submission to the GVI of requests for payment of $92,500 for bonding fees pursuant to the gymnasium contract, and $144,426 for the cost of a performance bond pursuant to the hospital contract. Gumbs, however, paid only $10,000 for the performance bond for the hospital contract, and had not paid any amount for performance bonds for the gymnasium contract. Gumbs was indicted on two counts of willfully causing a false claim to be made or presented to a federal department in violation of 18 U.S.C. S 2(b) and S 287.1

_____

1. Gumbs was also indicted on two counts of making false statements in a matter within the jurisdiction of a federal department in violation of 18
U.S.C. S 1001, but these counts were dismissed before trial.

2

Gumbs moved for judgment of acquittal at the close of the government's case pursuant to Rule 29(a) of the Federal Rules of Criminal Procedure, and renewed his motion at the close of trial. The District Court denied Gumbs's motion, and the jury convicted him on the two false claims counts. The District Court sentenced Gumbs to eighteen months on each count, to be served concurrently, and ordered him to pay $251,131 in restitution. Gumbs appeals from the final judgment of the District Court, which subsumes the District Court's denial of his motion for judgment of acquittal.

This appeal requires us to determine the mens rea required for a defendant to be convicted of causing a false claim to be made or presented to a department of the United States, in violation of 18 U.S.C. S 2(b) and S 287. Gumbs submits that there was insufficient evidence that he knew that the contracts in question were federally funded, and that such knowledge is required before a defendant may be convicted under S 2(b) and S 287. The government responds that S 2(b) and S 287 do not require a defendant to know that he is causing a false claim to be presented to a federal department.

Section 2(b) makes it a crime for a person to "willfully cause[ ] an act to be done which if directly performed by him . . . would be an offense against the United States." In general, for a defendant to be convicted under S 2(b), the government must prove two mens rea elements. First, the defendant must possess the mental state required by the underlying statute that the defendant caused another to violate, in this case S 287. Section 287 makes it a crime to "make[ ] or present[ ] . . . to any department [of the United States] . . . any claim upon . . . the United States, or any department or agency thereof, knowing such claim to be false, fictitious, or fraudulent." We conclude that the mens rea element of S 287 does not require a defendant who presents a false claim to the federal government to know that he is presenting the claim to the federal government.

In addition to requiring a defendant to possess the mens rea required by the underlying statute, however, S 2(b) imposes the further mens rea requirement that a defendant "willfully" cause the act prohibited by the underlying

3

statute. More specifically, this additional mens rea element means that in a prosecution under S 2(b) andS 287, a defendant must willfully cause a false claim to be presented to the federal government. Although on its face, this willfulness requirement would seem to require a defendant who causes an intermediary to present a false claim to a federal department to know that the false claim will be presented to a federal department, the requirement that the false claim be presented to a federal department is a jurisdictional requirement, and the Supreme Court has held that a defendant generally need not be aware of the existence of a jurisdictional element to be guilty of a federal offense. See United States v. Feola, 420 U.S. 671, 672-73, 696 (1975) (holding that knowledge that the intended victim is a federal officer is not an element of the crime under 18 U.S.C. SS 111 and 371 of conspiracy to assault a federal officer engaged in the performance of official duties); see also United States v. Yermian, 468 U.S. 63, 75 (1984) (holding that to be guilty of making a false statement in a matter within the jurisdiction of a federal agency in violation of 18 U.S.C. S 1001, a defendant need not know that the statement was made in a matter within the jurisdiction of a federal agency).

However, to be convicted of willfully causing an intermediary to present a false claim to a federal department, a defendant must at least know that he is causing the intermediary to present a false claim to someone, even if he does not know that the department to which he is causing the intermediary to present a false claim is in fact a federal department. Applying this standard to this case, we conclude that there is insufficient evidence from which a rational jury could find beyond a reasonable doubt that Gumbs knew that he was causing the GVI to make or present a false claim. In particular, there is no evidence that Gumbs knew that his contract was funded by anyone other than the GVI. We cannot uphold the conviction on some notion that it is generally known that all government contracts in the Virgin Islands are funded, at least in part, by the federal government.

4

Accordingly, we will reverse Gumbs's conviction and remand with instructions to enter a judgment of acquittal.[2]

I.

Gumbs was convicted under the federal False Claims Act, 18 U.S.C. S 287, which provides that:

> Whoever makes or presents to any person or officer in the civil, military, or naval service of the United States, or to any department or agency thereof, any claim upon or against the United States, or any department or agency thereof, knowing such claim to be false, fictitious, or fraudulent, shall be imprisoned not more than five years and shall be subject to a fine in the amount provided in this title.

The actus reus element of S 287 thus requires the defendant to present a claim to a "person or officer in the civil, military, or naval service of the United States," or a "department or agency" of the United States. [3] Since it is undisputed that Gumbs presented his claims for payment to the GVI, which is neither a "person or officer in the civil, military, or naval service of the United States," nor a "department or agency" of the United States, as defined in 18 U.S.C. S 6, he did not commit the requisite actus reus to be convicted of directly violating S 287. [4]

_____

2. The District Court had jurisdiction over this case pursuant to 18 U.S.C. S 3241, and we have appellate jurisdiction pursuant to 28 U.S.C. S 1291. In reviewing a guilty verdict for sufficiency of the evidence, we must affirm the defendant's conviction if, viewing the evidence in the light most favorable to the government, a rational jury could find beyond a reasonable doubt that the government proved all the elements of the offense. See United States v. Pressler, 256 F.3d 144, 149 (3d Cir. 2001).

3. The actus reus element of a crime is the "wrongful deed that comprises the physical components of a crime and that generally must be coupled with mens rea to establish criminal liability." Black's Law Dictionary 37 (7th ed. 1999).

4. The federal criminal code defines the terms "department" and "agency" as follows:

> The term "department" means one of the executive departments enumerated in section 1 of Title 5, unless the context shows that

5

Even though Gumbs did not directly violate S 287 because he did not present a claim to a department or agency of the United States, he may still be guilty under 18 U.S.C. S 2(b), which provides that "[w]hoever willfully causes an act to be done which if directly performed by him . . . would be an offense against the United States, is punishable as a principal." If there is sufficient evidence that Gumbs willfully caused the GVI to present a false claim to a department or agency of the United States, then his conviction must be affirmed under S 2(b) in combination with S 287. See United States ex rel. Marcus v. Hess, 317 U.S. 537 (1943) (upholding defendants' liability in a qui tam suit under the predecessor to S 287, which criminalized causing a fraudulent claim to be presented to the federal government, where the defendants presented fraudulent claims to local entities, who in turn presented the claims to the federal government); United States v. Catena , 500 F.2d 1319 (3d Cir. 1974) (upholding a conviction underS 2(b) and S 287, where the defendant presented false Medicare claims to private insurance companies, who in turn presented the claims to the federal government). 5

_____

        such term was intended to describe the executive, legislative, or judicial branches of the government.

        The term "agency" includes any department, independent establishment, commission, administration, authority, board or bureau of the United States or any corporation in which the United States has a proprietary interest, unless the context shows that such term was intended to be used in a more limited sense.

18 U.S.C. S 6.

5. Although the government did not cite S 2(b) in the indictment, the indictment charged that Gumbs "knowingly and willfully made and presented and caused to be made and presented to the United States Department of the Interior . . . a claim upon and against the United States . . . knowing that such claim was false . . .." We held in Catena that such an indictment is sufficient to charge a violation of S 2(b) in tandem with S 287:

        The text of each count [of the indictment] accused the defendant of "presenting and causing to be presented" a false claim to an agency of the United States. While the indictment did not by its terms refer
        specifically to S 2(b), but rather referred only to S 287, this omission
        is not fatal.

500 F.2d at 1323 (internal alterations omitted).

Gumbs argues that to violate S 2(b) in conjunction with S 287, a defendant must know that he is causing a false claim to be presented to the federal government. See Hess, 317 U.S. at 544-45 (noting that the predecessor to S 287, which criminalized causing a false claim to be presented to the federal government, "indicate[s] a purpose to reach any person who knowingly assisted in causing the [federal] government to pay claims which were grounded in fraud, without regard to whether that person had direct contractual relations with the [federal] government" (emphasis added)); Catena, 500 F.2d at 1323 n.7 ("[I]t would have been futile for the defendant to contend at trial that he did not know that the claim forms he sent to the carriers would ultimately be paid out of the federal treasury. The forms each contained the heading, in large letters, `Request for Medicare Payment,' and on the next line, `Medical Insurance Benefits -- Social Security Act.' "). Gumbs further cites cases from other circuits, identified in the margin, which affirmed convictions under S 2(b) and S 287 where it was clear that the defendant knew that he was causing an intermediary to present a false claim to the federal government.6 Accordingly, in Gumbs's submission, his conviction must be reversed because there is insufficient evidence that he possessed the requisite mens rea.

The government responds that no showing that a defendant knew that the false claim would be submitted to

---

6. See United States v. Murph, 707 F.2d 895, 896 (6th Cir. 1983) (per curiam) (affirming a conviction under S 287, where the defendant sold a false income tax return to a discounter and "knew when he sold the return to the discounter that the discounter was buying it for the purpose of presenting it to the government for a refund"); United States v. Blecker, 657 F.2d 629, 634 (4th Cir. 1981) (upholding defendant's conviction under S 2(b) and S 287 where "there was substantial evidence that [defendant] submitted invoices for hourly rates based on falsified resumes with knowledge that [the party to whom the claims were submitted] would seek reimbursement for the payment of the invoices from the GSA"); United States v. Beasley, 550 F.2d 261, 273-74 (5th Cir. 1977) ("[W]e hold that false claims submitted to the state when the claimants knew that the state would rely on these claims for reimbursement from the federal government pursuant to a joint federal-state program fall within the federal false claims statute.").

7

the federal government is required under S 2(b) and S 287, citing United States v. Montoya, 716 F.2d 1340 (10th Cir. 1983), which held that to be guilty of causing a false claim to be submitted to the federal government in violation of S 2(b) and S 287, a defendant need not know that the claim would ultimately be paid out of federal funds. Id. at 1344. However, the Supreme Court's decision in Hess and our decision in Catena suggest that knowledge that the false claim will be paid from federal funds is necessary for a defendant to be convicted of causing a false claim to be presented to the federal government. Nonetheless, because the defendant knew that the claims would be paid out of federal funds in those cases, the Court did not have occasion to address squarely the question whether a conviction may be upheld under S 2(b) andS 287 where the defendant does not know that the claims presented will be paid out of federal funds. Given the absence of any binding authority directly on point, we turn to the general principles of criminal law underlying S 2(b) for guidance in determining the mens rea required underS 2(b) and S 287.

A.

Section 2(b) imposes liability on a defendant who does not himself commit the prohibited actus reus, but intentionally manipulates an innocent intermediary to commit the prohibited actus reus:

> It is but to quote hornbook law to say that in every crime there must exist a union or joint operation of act, or failure to act, and intent. However, this is far from suggesting that the essential element of criminal intent must always reside in the person who does the forbidden act. Indeed, the latter may act without any criminal intent whatever, while the mens rea–– "willfulness" –– may reside in a person wholly incapable of committing the forbidden act. When such is [the] case, as at bar, the joint operation of act and intent prerequisite to commission of the crime is provided by the person who willfully causes the innocent actor to commit the illegal act. And in such a case, of course, only the person who willfully causes the forbidden act to be done is guilty of the crime.

8

United States v. Lester, 363 F.2d 68, 73 (6th Cir. 1966), quoted in United States v. American Investors of Pittsburgh, Inc., 879 F.2d 1087, 1095 (3d Cir. 1989).

Consistent with these principles, we read S 2(b) as establishing two general mens rea elements. First, to be guilty under S 2(b), a defendant must possess the mens rea required by the underlying criminal statute that the defendant caused the intermediary to violate, in this case S 287. See United States v. Curran, 20 F.3d 560, 567 (3d Cir. 1994) ("Section 2(b) imposes criminal liability on those who possess the mens rea to commit an offense and cause others to violate a criminal statute."); see also United States v. Hsia, 176 F.3d 517, 522 (D.C. Cir. 1999) (holding that the mens rea element under S 2(b) requires proof of "the mens rea for the underlying offense"); United States v. Gabriel, 125 F.3d 89, 99 (2d Cir. 1997) ("Generally, to establish a conviction through the use of section 2(b), the government must prove that the defendant had the mental state necessary to violate the underlying criminal statute . . . .").

In addition to requiring the defendant to possess the mental state necessary to violate the underlying statute, S 2(b) also requires the defendant to possess the intent to cause the act prohibited by the underlying statute. This element arises from the explicit requirement inS 2(b) that the defendant "willfully" cause the prohibited actus reus. For example, in United States v. Curran, 20 F.3d 560 (3d Cir. 1994), we held that the mens rea element required under S 2(b) for causing a false statement to be made in violation of 18 U.S.C. S 1001 goes beyond the mens rea required by S 1001:

> When proceeding under section 2(b) in tandem with section 1001, the government must prove that a defendant caused the intermediary to make false statements. The intent element differs from that needed when the prosecution proceeds directly under section 1001. The prosecution must not only show that a defendant had the requisite intent under section 1001 (deliberate action with knowledge that the statements were not true), but must also prove that he "willfully" caused the false representations to be made.

9

Id. at 567–68; see also United States v. Barel, 939 F.2d 26, 42 (3d Cir. 1991) (reversing a defendant's conviction under S 2(b) where "[t]he government did not produce any evidence to show [defendant] intended to cause[a third party] to breach a statutory duty").

To sum up, in a prosecution under S 2(b), the government must show the following mens rea elements: (1) that the defendant had the mens rea required by the underlying statute; and (2) that the defendant willfully caused the innocent intermediary to commit the act prohibited by the underlying statute. See United States v. Gabriel , 125 F.3d 89, 101 (2d Cir. 1997) ("The most natural interpretation of section 2(b) is that a defendant with the mental state necessary to violate the underlying section is guilty of violating that section if he intentionally causes another to commit the requisite act." (emphasis omitted)); see also United States v. Hsia, 176 F.3d 517, 522 (D.C. Cir. 1999) ("The natural reading of SS 2(b) and 1001 is this: the government may show mens rea simply by proof (1) that the defendant knew that the statements to be made were false (the mens rea for the underlying offense-- S 1001) and (2) that the defendant intentionally caused such statements to be made by another (the additional mens rea for S 2(b))."). We will therefore consider the substance of each of these general mens rea requirements in a prosecution under S 2(b) in tandem with S 287.

B.

We first consider whether the mens rea required by S 287 requires the defendant to know that the department to which the false claim is presented is a federal department, and conclude that it does not. First, the phrase"knowing" in S 287 is placed after the requirement that the false claim be submitted to a federal agency: "Whoever makes or presents . . . to any department or agency [of the United States], any claim . . . against the United States, or any department or agency thereof, knowing such claim to be false, fictitious or fraudulent, shall be imprisoned not more than five years . . . ." (emphasis added). This placement of the mens rea requirement indicates that a defendant may violate S 287 even if he does not know that the department

10

to whom he is presenting the false claim is a federal department. Cf. United States v. Yermian, 468 U.S. 63, 69 (1984) ("[T]he statutory language [in 18 U.S.C. S 1001] makes clear that Congress did not intend the terms `knowingly and willfully' to establish the standard of culpability for the jurisdictional element of S 1001. The jurisdictional language appears in a phrase separate from the prohibited conduct modified by the terms `knowingly and willfully.' ").

Moreover, the requirement in S 287 that the department to whom the false claim is presented be a federal department is jurisdictional in nature. Cf. Yermian, 468 U.S. at 68 ("The statutory language [in 18 U.S.C. S 1001] requiring that knowingly false statements be made`in any matter within the jurisdiction of any department or agency of the United States' is a jurisdictional requirement. Its primary purpose is to identify the factor that makes the false statement an appropriate subject for federal concern."). Generally, to be guilty of a federal offense, a defendant need not be aware of the existence of a jurisdictional element. See id. at 68–69 ("[T]he existence of the fact that confers federal jurisdiction need not be one in the mind of the actor at the time he perpetrates the act made criminal by the federal statute." (quoting United States v. Feola, 420 U.S. 671, 676–77 n.9 (1975))).

We therefore hold that the mens rea necessary for a direct violation of S 287 does not require knowledge that the party to whom the claim was presented is a federal department. See United States v. Montoya, 716 F.2d 1340, 1345 (10th Cir. 1983) ("[I]gnorance of the federal presence does not negate the requisite mens rea for aS 287 violation –– the intent to present a fraudulent claim.").

C.

As discussed above, however, S 2(b) requires a mens rea element in addition to that required by the underlying offense. In particular, S 2(b) requires that the defendant "willfully" cause an intermediary to commit the prohibited actus reus. This willfulness requirement means that in a prosecution for causing an intermediary to present a false

11

claim to a federal department, the defendant must at least have known that he was causing the intermediary to present a false claim. If a defendant simply presents a false claim, without any knowledge that the entity to whom the false claim is presented will in turn present the false claim to a third party, then the defendant cannot be said to have willfully caused the intermediary to commit the actus reus prohibited under S 287.

Accordingly, we may uphold Gumbs's conviction only if there is sufficient evidence, when viewed in the light most favorable to the government, for a rational jury to conclude beyond a reasonable doubt that Gumbs knew that he was causing the GVI to make or present a false claim. Put differently, acquittal is required in this case unless there is sufficient evidence that Gumbs knew that the contract was actually funded by someone other than the GVI.

We need not decide whether a defendant, to be convicted under S 2(b) in tandem with S 287 of causing an intermediary to present a false claim to a federal department, must know not only that he is causing the intermediary to present a false claim, but also that the party to whom the intermediary is presenting the claim is a federal department. Although the willfulness requirement of S 2(b) appears on its face to require the defendant to have knowingly caused each element of the actus reus prohibited by the underlying statute, including the requirement under S 287 that the false claim be submitted to the federal government, mens rea requirements generally do not extend to the jurisdictional element of the actus reus , as discussed above. See United States v. Feola, 420 U.S. 671, 672–73, 696 (1975) (holding that knowledge that the intended victim is a federal officer is not an element of the crime under 18 U.S.C. SS 111 and 371 of conspiracy to assault a federal officer engaged in the performance of official duties); see also United States v. Yermian, 468 U.S. 63, 75 (1984) (holding that to be guilty of making a false statement in a matter within the jurisdiction of a federal agency in violation of 18 U.S.C. S 1001, a defendant need not know that the statement was made in a matter within the jurisdiction of a federal agency).

12

At all events, as discussed below, there is insufficient evidence that Gumbs knew that his contract was funded by anyone other than the GVI, and therefore insufficient evidence that he knew that he was causing the GVI to present a false claim. Thus, we hold only that to violate S 2(b) in conjunction with S 287 by willfully causing an intermediary to present a false claim to a federal department, a defendant must know at least that he is causing the intermediary to submit a false claim. Accordingly, we reserve the question whether such a defendant must also know that the party to whom he is causing the intermediary to present the false claim is a federal department.

II.

Having concluded that a defendant may be convicted of causing an intermediary to present a false claim to the federal government in violation of S 2(b) andS 287 only if the defendant knows that he is causing the intermediary to submit a false claim, we turn to whether there is sufficient evidence to support Gumbs's conviction in this case. However, we find no evidence in the record that Gumbs had any knowledge that the contracts in question were funded by anyone other than the GVI. There is therefore no evidence from which a rational jury could conclude beyond a reasonable doubt that Gumbs knew that he was causing the GVI to submit a false claim.

The government relies on Gumbs's testimony that he has been a building contractor since 1966, and that he had done "a lot of government projects." In particular, between 1989 and 1992 Gumbs had approximately $15 million worth of contracts. But the mere fact that Gumbs was an experienced government contractor is inadequate to establish beyond a reasonable doubt that he knew that his contract was funded by someone other than the GVI. Even the most experienced contractor need not know that a contract with the Virgin Islands is funded by a third party unless there is some concrete indicia of third-party funding. While it may be that nearly all government contracts in the USVI are federally funded, this fact is not capable of judicial notice under Federal Rule of Evidence 201(b), since

13

it is neither "generally known within the territorial jurisdiction of the trial court," nor "capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned."

The government argues that the contracts provided that "[t]he Work shall be done under the direct supervision of the Government, and in accordance with the laws of the Government and its Rules and Regulations thereunder issued and any and all applicable federal rules and regulations."[7] But it cannot be inferred beyond a reasonable doubt from this provision that Gumbs knew that the contract was federally funded. This provision simply reminds contractors of their duty to comply with federal rules and regulations such as OSHA and antidiscrimination laws, and could be included in both federally funded contracts and nonfederally-funded contracts alike. While it may be that such language is unnecessary, insofar as federal rules and regulations apply of their own force, it is nonetheless customary to include such clauses in contracts, regardless of their source of funding.

That the contractual provision requiring contractors to comply with federal law provides insufficient evidence for a reasonable jury to conclude beyond a reasonable doubt that the contract was federally funded is illustrated by the fact that the contractual provision also reminds contractors of their duty to comply with the laws of the GVI. By the government's logic, a rational jury could therefore infer beyond a reasonable doubt that the contract was funded by the GVI. But the hospital contract, which included this provision requiring the contractor to comply with the laws of the GVI, was 100% funded by federal money. Thus, where a contract requires the contractor to comply with the law of a given sovereign, it cannot be inferred beyond a reasonable doubt that the contract is funded by that sovereign.

In sum, there was insufficient evidence, even when viewed in the light most favorable to the government, from which a rational jury could conclude beyond a reasonable doubt that Gumbs knew that he was causing the GVI to

_____

7. The contracts define "Government" as the GVI.

14

make or present a false claim. Accordingly, we will reverse Gumbs's conviction and remand with instructions to enter a judgment of acquittal. See Burks v. United States, 437 U.S. 1, 18 (1978) ("[T]he Double Jeopardy Clause precludes a second trial once the reviewing court has found the evidence legally insufficient . . . .").8

A True Copy:
Teste:

        Clerk of the United States Court of Appeals
        for the Third Circuit
_____

8. We acknowledge that this result is unfortunate, since Gumbs will escape punishment even though a jury found that he intentionally defrauded the GVI, and as a result obtained federal taxpayer dollars to which he was not entitled. In the future, however, the GVI and other entities that receive federal funding can avoid this result by including a clause in contracts notifying contractors that the contract is federally funded and that any claims presented pursuant to the contract will be presented to the federal government, thus subjecting the contractors to criminal penalties under the federal False Claims Act. Moreover, the federal government could require grant recipients, such as the GVI, as a condition on the receipt of the grant, to include such a provision in contracts funded by the grant, as is required of states in the Medicaid and Medicare context. See 42 C.F.R. S 457.950(b)(2) ("A State that makes payments to fee-for-service entities under a separate child health program must . . . [e]nsure that fee-for-service entities understand that payment and satisfaction of the claims will be from Federal and State funds, and that any false claims may be prosecuted under applicable Federal or State laws . . . .").

15